**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Dylan Tokar<br>2122 P. St. NW Suite 201<br>Washington, D.C., 20037<br><br>      Plaintiff,<br><br>   v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530<br><br>      Defendant. | Civil Action No.  1:16-cv-2410 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, for injunctive and other appropriate relief. Plaintiff Dylan Tokar ("Tokar" or "Plaintiff") is

a journalist for a news organization that reports on the Department of Justice's ("DOJ's")

Criminal Division Fraud Section and its investigations into violations of the Foreign Corrupt

Practices Act ("FCPA"). Plaintiff seeks records that would add transparency to a practice

through which corporations investigated for FCPA violations are able to avoid criminal

convictions by entering into deferred prosecution agreements ("DPAs") and, in so doing, agree

to hire a DOJ-approved independent corporate monitor at significant cost. The records sought by

Plaintiff would show whether these monitors have been nominated and selected in a manner that

effectively screens for conflicts of interest.

2.      This case involves two FOIA requests. Plaintiff's first FOIA request ("First FOIA

Request") seeks the names of the corporate-monitor candidates nominated by 15 companies that

settled criminal FCPA charges. It also seeks records that would show which DOJ officials sit on a Criminal Division internal committee tasked with making final monitor selections, the length of these officials' tenures on the committee, and the instances in which they sought recusals. Plaintiff's second FOIA request ("Second FOIA Request") seeks disclosure of any potential objection letters regarding the First FOIA Request written by corporations covered by the First FOIA Request and delivered to the DOJ. Plaintiff is statutorily entitled to the disclosure of these records, and Defendant has improperly withheld the records in violation of the law and in opposition to the strong public interest served by increased public awareness of how justice is administered when admitted FCPA violators are not criminally prosecuted.

### Jurisdiction and Venue

3.      This Court has subject-matter jurisdiction over this matter and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

### Parties

4.      Plaintiff Dylan Tokar is a reporter at "Just Anti-Corruption," a trade publication for lawyers. The publication specializes in covering FCPA and is currently researching the process of corporate-monitors selection under DPAs. Mr. Tokar's journalism seeks to broaden understanding of international anti-corruption enforcement and, in so doing, enhance accountability for these programs.

5.      Defendant DOJ is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 702.

## FACTUAL ALLEGATIONS

### Background

6.     Responding to a growing number of DPAs between the DOJ and FCPA violators, Mr. Tokar sought records regarding the selection of corporate monitors for 15 corporations that had resolved criminal FCPA allegations through such agreements. The DOJ has broad discretion to negotiate such DPAs with a company investigated for FCPA violations. As part of a DPA, the DOJ can require that a corporation hire an independent monitor at its own expense to ensure compliance. If the DOJ and a corporation pursue a DPA, a court has limited oversight over compliance with such an agreement. United States v. Fokker Servs. B.V., 818 F.3d 733, 743–44 (D.C. Cir. 2016) (citing Wayte v. United States, 470 U.S. 598, 607–08 (1985)).

7.     Given the role monitors play in ensuring FCPA compliance, Mr. Tokar and "Just Anti-Corruption" are not alone in their interest in how monitors impact corporations' anti-corruption improvements under DPAs. 100Reporters, a non-profit news organization, is currently seeking the release of a monitor's report for Siemens and in January 2016 a district court judge ordered HSBC to release a redacted version of its monitor's report to the public.

8.     Records responsive to Mr. Tokar's FOIA request would show whether the DPA program is operated in a manner consistent with principles the DOJ established for monitor selection in 2008 in a memorandum written by then-Acting Deputy Attorney General Craig S. Morford (referred to hereinafter as the Morford Memo). Specifically the request asks for the names of individuals nominated as candidates for monitorships under the program and records describing DOJ's recusal procedures during the selection process.

9.     The 2008 administrative guidelines headed off an attempt by Congress to "establish safeguards and eliminate the culture of favoritism and political interference that permeates these corporate monitor agreements." Deferred Prosecution: Should Corporate

Settlement Agreements be Without Guidelines: Hearing Before the Subcomm. on Commercial & Admin. Law of the H. Comm. on the Judiciary, 110th Cong. 312 (2008) (statement of Rep. William Pascrell). Rep. Pascrell drafted legislation that would have given federal courts the final say on selection of lucrative corporate monitorships. He also asked for a hearing to address a lack of standards governing the selection process of corporate monitors. In his statements at the hearing, Rep. Pascrell expressed concern over the potential or actual conflict of interest at issue if a DOJ official were to unilaterally award a lucrative monitorship to a politically connected former Department colleague. For this reason, Rep. Pascrell preferred a third-party decision-maker, such as a federal district court judge or magistrate, over a selection controlled jointly by the DOJ and the corporation under criminal investigation.

10.     Between the time Rep. Pascrell introduced legislation and the date of the hearing before the House Judiciary Committee, the DOJ published the Morford Memo, which Rep. Pascrell maintained gave too much discretion to DOJ officials. Another member of Congress identified another type of conflict: "[W]hen you have a potential wrongdoer, which is the corporate entity, requesting or signing off on who is going to monitor compliance with the agreement." Id. at 299 (statement of Rep. William Delahunt).

11.     Ultimately, the memo laid out several principles central to the safeguarding of the monitor selection program from conflicts while still authorizing DOJ officials working together with monitored entities, to choose monitors. The memo nevertheless addressed certain of the concerns raised at the House Judiciary Committee hearing regarding conflicts and the independence of monitors. Principle No. 1 of the Morford Memo describes the goal of having a DOJ selection process designed to "(1) select a highly qualified and respected person . . . (2) avoid potential and actual conflicts of interest, and (3) otherwise instill public confidence." Craig S. Morford, Selection and Use of Monitors in Deferred Prosecution Agreements and Non-

Prosecution Agreements with Corporations, 3 (March 7, 2008). Principle No. 2 states that "[a] monitor is an independent third-party." Id. at 4.  The memo seeks to achieve these goals of independence and conflict-of-interest avoidance through several mechanisms including the creation of a "standing or *ad hoc* committee in the Department" and a reminder to those involved in the selection process that they must comply with Department conflict-of-interest regulations. Id. More specifically, the Morford Memo calls for selection of monitors through the use of a candidate pool "of at least three qualified monitor candidates" whenever possible. Id.

12.    Mr. Tokar has requested records under FOIA that would allow the public to gauge whether the principles and procedures established in the Morford Memo effectively eliminated potential or actual conflicts of interest in regard to the deferred prosecutions of 15 corporations investigated for Foreign Corrupt Practices Act (FCPA) violations. Mr. Tokar in his First FOIA Request requested the names of individuals on the DOJ's Standing Committee on the Selection of Monitors and their recusal records for these DPAs. Additionally, Mr. Tokar requested the names and professional affiliations of individuals nominated but not ultimately selected for monitorships.

13.    A recent District Court order illustrates the importance of this second type of record—the names of monitor candidates not ultimately selected. Without disclosure of these names, it is difficult to know whether either the government or the corporate entity under investigation is taking advantage of the selection process in a manner that undermines the DPA objectives. In U.S. Commodity Futures Trading Comm'n v. Deutsche Bank AG, Judge Pauley of the U.S. District Court for the Southern District of New York ordered the Agency to submit the names of at least three candidates for the monitorship. Order at 1–2, U.S. Commodity Futures Trading Comm'n v. Deutsche Bank AG, No. 16-6544 (S.D.N.Y. Sept. 22, 2016). After the Agency filed the names with the Court, Judge Pauley issued a follow-up order concluding that

"two candidates had been proposed by Deutsche Bank and were offered *merely to comply in form* with this Court's earlier order." Op. & Order Appointing Independent Monitor at 4 (emphasis added). The Court interviewed the remaining candidate but ultimately "conducted its own search" and picked an alternative for the monitor position. *Id.* Federal courts do not possess the authority to veto monitor selections in the context of the criminal FCPA DPAs that are the subject of this request. Nevertheless, the Deutsche Bank case demonstrates the ways in which the corporate monitor selection process is potentially vulnerable to manipulation. Additionally, it shows that an accurate assessment of the strengths and weaknesses of a corporate monitor selection process depends on transparency—not only with regard to the candidates ultimately chosen but also to those candidates proposed but not selected.

## Plaintiff's FOIA Requests

### Plaintiff's First FOIA Request

14.     On April 24, 2015, Mr. Tokar submitted his First FOIA Request to the Criminal Division of the DOJ. It requested (1) all documents submitted by counsel for the companies in the monitor selection process, including the three qualified candidates; (2) all monitor selection memoranda in the selection of candidates by the Standing Committee on the Selection of Monitors; and (3) records of the Standing Committee including its membership, attendance, and voting records. Mr. Tokar further sought a fee waiver as a member of the press seeking records in the public interest pursuant to 552 U.S.C. § 552(a)(4)(A)(ii)(II) and 552 U.S.C. § 552(a)(4)(A)(iii). A true and correct copy of this request is attached hereto as Exhibit 1, and is incorporated by reference herein.

15.     Subsequent to this initial request, a DOJ Criminal Division lawyer, Peter Sprung, engaged with the Plaintiff on the matter via phone and email. He speculated that FOIA

Exemptions 5 (protecting the agency's internal deliberative process) and 6 (protecting the personal privacy of the two rejected monitor candidates) might apply.

16.     On August 11, 2015, Plaintiff narrowed the First FOIA Request to the following: (1) The names of up to three monitor candidates and their associated law or consulting firms submitted to the DOJ by the defendant corporations[1] under the terms of their negotiated resolutions; and (2) the names and titles of members of the Criminal Division's Standing Committee on the Selection of Monitors for the period of January 1, 2009 to the present date. A true and correct copy of this narrowed request is attached hereto as Exhibit 2, and is incorporated by reference herein.

17.     On November 10, 2015, Plaintiff emailed a letter to Kenneth Courter, then-chief of the Criminal Division's FOIA unit, to note it had been more than 180 days since Plaintiff's First FOIA Request and that Plaintiff had not received any response. A true and correct copy of this email is attached hereto as Exhibit 3, and is incorporated by reference herein.

18.     On January 13, 2016, Mr. Sprung notified corporations named on Plaintiff's FOIA request that the DOJ has "reason to believe that we are in possession of business information pertaining to your company that may constitute privileged or confidential business information subject to withholding pursuant to FOIA Exemption (b)(4)." Citing Executive Order 12,600 and the DOJ's FOIA regulation 28 C.F.R. § 16.8, Mr. Sprung told the Plaintiff he is required to notify the companies affected by Mr. Tokar's request and to give them an opportunity to object to disclosure where records may be protected pursuant to 5 U.S.C. § 552(b)(4). A true and correct copy of this email is attached hereto as Exhibit 4, and is incorporated by reference herein.

---

[1] The corporations being Alstom S.A., Avon Products, Inc.; Bilfinger SE; Weatherford International Ltd.; Diebold Inc.; Biomet, Inc.; Smith & Nephew, Inc.; JGC Corporation; Alcatel-Lucent, S.A.,;  Alliance One International AG; Universal Corporation; Technip S.A., Daimier AG; Innospec Inc.; and BAE Systems plc.

19.     On February 3, 2016, counsel for Avon Products Inc., one of the companies included in the First FOIA Request, wrote a letter to Mr. Courter, informing the DOJ that "Avon is not asserting that this is confidential business information." A true and correct copy of this letter is attached hereto as Exhibit 5, and is incorporated by reference herein.

20.     On February 24, 2016, Mr. Tokar emailed Mr. Sprung a copy of the Avon Products letter and a request for a determination, noting: "we're long past the statutory 20-day deadline (as well as the 10-day extension)." A true and correct copy of this email is attached hereto as Exhibit 6, and is incorporated by reference herein.

**Plaintiff's Second FOIA Request**

21.     On April 12, 2016, Mr. Tokar filed his Second FOIA Request seeking disclosure of any potential objection letters from defendant corporations as to the release of corporate monitorship records by the DOJ in response to the First FOIA Request. Mr. Tokar sought a fee waiver for both FOIA requests as a member of the press seeking records in the public interest pursuant to 552 U.S.C. § 552(a)(4)(A)(ii)(II) and 552 U.S.C. § 552(a)(4)(A)(iii). A true and correct copy of this request is attached hereto as Exhibit 7, and is incorporated by reference herein.

**Defendant's Subsequent Treatment of Plaintiff's FOIA Requests**

22.     The DOJ acknowledged receipt of the Second FOIA Request but did not provide Mr. Tokar with a determination.

23.     On March 29, 2016, Mr. Tokar emailed Amanda Jones, who had replaced Mr. Courter as the Criminal Division FOIA officer, to inquire about the First FOIA Request. Mr. Tokar attached the Avon Products, Inc. letter in his email to Ms. Jones. A true and correct copy of this email is attached hereto as Exhibit 8, and is incorporated by reference herein.

24.     On May 26, 2016, attorney Alison Schary of Davis Wright & Tremaine, sent a letter to Criminal Division FOIA officer Ms. Jones on Mr. Tokar's behalf to inquire about the status of the First FOIA Request.

25.     On May 26, 2016, Mr. Sprung replied (via phone) that he was "hopeful" the DOJ would provide a final written determination within a week and agreed to also provide letters regarding Mr. Tokar's request that the DOJ sent to individual monitor candidates. Mr. Sprung stated that he was unaware of the Second FOIA Request seeking disclosure of potential objection letters to the initial FOIA request from corporate defendants.

26.     On May 26, 2016, Ms. Schary emailed Mr. Sprung a copy of the Second FOIA Request. A true and correct copy of this email is attached hereto as Exhibit 9, and is incorporated by reference herein.

27.     As of December 8, 2016, Mr. Tokar has yet to receive a formal determination on the First FOIA request.

28.     As of December 8, 2016, Mr. Tokar has yet to receive a formal determination on the Second FOIA Request.

29.     Mr. Tokar further sought a fee waiver for both FOIA requests as a member of the press seeking records in the public interest pursuant to 552 U.S.C. § 552(a)(4)(A)(ii)(II) and 552 U.S.C. § 552(a)(4)(A)(iii). Mr. Tokar is still awaiting a determination.

### Plaintiff's Constructive Exhaustion Administrative Remedies

30.     It has been 594 days since the DOJ received Mr. Tokar's First FOIA Request.

31.     It has been 240  days since the DOJ received Mr. Tokar's Second FOIA Request.

32.     The DOJ has failed to make a determination regarding Mr. Tokar's two FOIA requests within the time period prescribed by 5 U.S.C. §§ 552(a)(6)(A)(i) and (a)(6)(E)(iii).

33.     Mr. Tokar has constructively exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## CAUSES OF ACTION

### Count I

**Violation of the Freedom of Information Act: Failure to Comply with Statutory Deadlines**

34.     Plaintiff repeats and re-alleges paragraphs 1–33.

35.     Defendant is an agency subject to FOIA. 5 U.S.C. §§ 551(1), 552(f)(1).

36.     By the First and Second FOIA Requests, plaintiff properly asked for within the custody and control of Defendant.

37.     Defendant DOJ failed to make a timely determination regarding Plaintiff's FOIA request, violating the statutory deadline imposed by FOIA. 5 U.S.C. § 556(a)(6)(A).

38.     Plaintiff has, or is deemed to have, exhausted the applicable administrative remedies with respect to his request. 5 U.S.C. § 552(a)(6)(C)(i).

### Count II

**Violation of the Freedom of Information Act: Wrongful Withholding of Agency Records**

39.     Plaintiff repeats and re-alleges paragraphs 1–33.

40.     Defendant is an agency subject to FOIA. 5 U.S.C. §§ 551(1), 552(f)(1).

41.     By the First and Second FOIA Requests, Plaintiff properly asked for records within the custody and control of Defendant.

42.     Defendant DOJ has failed to make responsive records available to Plaintiff, in violation of FOIA. 5 U.S.C. § 552(a)(3)(A).

43.     Plaintiff has, or is deemed to have, exhausted the applicable administrative remedies with respect to his First and Second FOIA Request. 5 U.S.C. § 552(a)(6)(C)(i).

## Count III
### Violation of the Freedom of Information Act: Failure to Grant News Media Fee Status and Fee Waiver

44.     Plaintiff repeats and re-alleges paragraphs 1–33.

45.     The First and Second FOIA Requests set forth facts supporting a determination that Just Anti-Corruption is entitled to news media fee status.

46.     In the First and Second FOIA Requests, Plaintiff set forth facts supporting a determination that he was entitled to a fee waiver.

47.     Defendant failed to make a determination with regards to Just Anti-Corruption's news media fee status in violation of FOIA. 5 U.S.C. § 552(a)(4).

48.     Defendant failed to make a determination with regards to Plaintiff's requests for a fee waiver, in violation of FOIA. 5 U.S.C. § 552(a)(4).

49.     Plaintiff has constructively exhausted the administrative remedies with respond to his fee waiver determination. 5 U.S.C. § 552(a)(6)(C)(i).

### Requested Relief

WHEREFORE, Plaintiff respectfully requests this Court:

1) order Defendant to conduct a reasonable search for all responsive records to both Plaintiff's August 11, 2015 FOIA request and Plaintiff's April 12, 2016 FOIA request and to immediately disclose all non-exempt records responsive to Plaintiff's FOIA requests in their entirety;

2) issue a declaration that Plaintiff is entitled to disclosure of the requested records;

3) issue a declaration that Plaintiff is entitled to news media fee status;

4) issue a declaration that Plaintiff is entitled to a fee waiver;

5) award Plaintiff reasonable attorney fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

6)  grant such other relief as the Court may deem just and proper.

///

///

///

///

///

Dated:  December 8, 2016

Respectfully submitted,

/s/J. Joshua Wheeler
J. Joshua Wheeler
DC Bar No. 451167

First Amendment Clinic
University of Virginia School of Law
The Thomas Jefferson Center for the
Protection of Free Expression
400 Worrell Drive
Charlottesville, VA 22911
Telephone: (434) 295-4784
Facsimile: (434) 296-3621
*Counsel for Plaintiff Dylan Tokar*