# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DYLAN TOKAR,

       Plaintiff,

   v.

UNITED STATES DEPARTMENT OF
JUSTICE,

       Defendant.

Civil Action No. 16-cv-2410 (RC)

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 4
   A.  Corporate Compliance Monitorships ........................................................................ 4
   B.  Plaintiff's FOIA Requests ......................................................................................... 6
   C.  Plaintiff's Lawsuit ..................................................................................................... 9

LEGAL STANDARDS ........................................................................................................ 11

ARGUMENT ....................................................................................................................... 12
   I.   Plaintiff is entitled to agency records responsive to his
      First FOIA Request, as narrowed .............................................................................. 12
   II.  Plaintiff is entitled to summary judgment in his favor
      because neither FOIA Exemption 6 nor 7(C) permit DOJ to withhold
      the names sought by Plaintiff .................................................................................... 14
      A.  DOJ does not and cannot show that disclosure of the names
         of corporate compliance monitor candidates and their respective
         professional services firms would constitute an "unwarranted
         invasion of personal privacy." ............................................................................ 17
      B.  DOJ does not and cannot show that disclosure of the names
         of DOJ employees who served on the Standing Committee would constitute
         an "unwarranted invasion of personal privacy." ................................................. 22
      C.  DOJ does not and cannot show that disclosure of the names
         of counsel for corporations responding to submitter notices would constitute
         an "unwarranted invasion of personal privacy." ................................................. 24
      D.  The public interest in disclosure outweighs any individual privacy concerns ............. 25

CONCLUSION .................................................................................................................... 28

# TABLE OF AUTHORITIES

## CASES

*100Reporters LLC v. United States Dep't of Justice,*
2017 WL 1229709 (D.D.C. Mar. 31, 2017)..................................................................... 25
*Am. Civil Liberties Union  v. U.S. Dep't of Justice*, 655 F.2d 1 (D.C. Cir. 2011)................. 16, 27
*Arieff v. Dep't of Navy*, 712 F.2d 1462 (D.C. Cir. 1983)............................................................ 11
*Armstrong v. Exec. Office of the President*, 97 F.3d 575 (D.C. Cir. 1996) ............................... 17
*Bigwood v. United States Agency for Int'l Dev.*, 484 F.Supp.2d 68 (D.D.C. 2007)..................... 12
*Billington v. U.S. Dep't of Justice*, 233 F.3d 581 (D.C. Cir. 2000)............................................ 12
*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998) ................................. 12, 15, 24
*Carter v. United States Dep't of Commerce*, 830 F.2d 388 (D.C. Cir. 1987)....................... 20, 21
*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice,*
746 F.3d 1082 (D.C. Cir. 2014)........................................................................................ 23, 27
*COMPTEL v. FCC*, 910 F. Supp. 2d 100 (D.D.C. 2012) ............................................................ 25
*Core v. United States Postal Service*, 730 F.2d 946 (4th Cir. 1984) ................................... 20, 21
*Davis v. U.S. Dep't of Justice*, 968 F.2d 1276 (D.C. Cir. 1992).................................................. 16
*Defenders of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83 (D.D.C. 2009)......................... 12
*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) .............................................................. 11, 19
*FBI v, Abramson*, 456 U.S. 615 (1982) ..................................................................................... 11
*Fed. Labor Relations Auth. v. United States Dep't of Treasury,*
884 F.2d 1446 (D.C. Cir. 1989)................................................................................................ 23
*Horowitz v. Peace Corps.*, 428 F.3d 271 (D.C. Cir. 2005)......................................................... 23
*Judicial Watch, Inc.  v. Export-Import Bank*, 108 F. Supp. 2d 19 (D.D.C. 2000).................... 21
*Judicial Watch, Inc. v. Food  Drug Admin.*, 449 F.3d 141 (D.C. Cir. 2006)............................... 17
*Judicial Watch of Florida v. Dep't of Justice*, 102 F. Supp. 2d 6 (D.D.C. 2000) ....................... 24
*Jurewicz v. USDA*, 741 F.3d 1326 (D.C. Cir. 2014)................................................................... 26
*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980) ....................... 13
*Kurzon v. Dep't of Health & Human Servs.*, 649 F.2d 65 (1st Cir. 1981)................................... 18
*Landmark Legal Foundation v. IRS*, 87 F. Supp. 2d 21 (D.D.C. 2000) ..................................... 24
*Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005).......... 22
*Lepelletier v, Federal Deposit Insurance Corp.*, 164 F.3d 37 (D.C. Cir. 1999)......................... 28
*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ........................................................................ 11
*Multi Ag Media LLC v. USDA*, 515 F.3d 1224 (D.C. Cir. 2008).................................... 15, 16, 24
*Nation Magazine, Washington Bureau v. U.S. Customs Serv.,*
71 F.3d 885 (D.C. Cir. 1995) ................................................................................................... 28
*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004).............................................. 27
*Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873 (D.C. Cir. 1989)..................... 15
*Nat'l Ass'n of Home Builders v. Norton*, 309 F. 3d 26 (D.C. Cir. 2002) ............................... 16, 25
*Neary v. FDIC*, 104 F. Supp. 3d 52 (D.D.C. 2015) .................................................................... 19
*News-Press v Dep't of Homeland Sec.*, 489 F.3d 1173 (11th Cir. 2007) .................................... 17
*NLRB v. Robbins Tired & Rubber Co.*, 437 U.S. 214 (1978)......................................................... 1
*Painting and Drywall Work Preservation Fund v. HUD*, 936 F.2d 1300 (D.C. Cir. 1991)......... 23
*Physicians Committee for Responsible Medicine v. Glickman,*
117 F. Supp. 2d 1 (D.D.C. 2000) ............................................................................. 18, 19, 26
*Stern v. FBI*, 737 F.2d 84 (D.C. Cir. 1984) ............................................................................... 24

*Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990) ............................................................ 12

*United States Dep't of Defense v. FLRA*, 510 U.S. 487 (1994) .................................................. 28

*United States Dep't of Justice v. Reporters Comm. For Freedom of Press*,
489 U.S. 749 (1989) ............................................................................................................ 16, 25

*United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989).......................................... 11

*Wash. Post v. HHS*, 690 F.2d 252 (D.D.C. 1982). ................................................................... 27

## STATUTES

5 U.S.C. § 552 .................................................................................................... 7, 9, 11, 12, 15

15 U.S.C. § 78dd-1, *et seq.* .......................................................................................................... 1

## OTHER AUTHORITIES

Alison Frankel, *DOJ Should End Secret Selection Process for Corporate Watchdogs*, Reuters,
July 14, 2014 ........................................................................................................................ 26

*Deferred Prosecution: Should Corporate Settlement Agreements be Without Guidelines: Hearing
Before the Subcomm. On Commercial & Admin. Law of the H. Comm. On the Judiciary*, 110th
Cong. 312 (2008) .............................................................................................................. 5, 26

Memorandum from Craig S. Morford, Acting Deputy Att'y Gen., for Heads of Dep't
Components and U.S. Att'ys (Mar 7, 2008) .......................................................................... 5

Steven Davidoff Solomon, *In Corporate Monitor, a Well-Paying Job but Unknown Results*, N.Y.
Times, Apr. 15, 2014 .............................................................................................................. 4

Veronica Root, *The Monitor-"Client" Relationship*, 100 VA L. REV. 523, 531 (2014) ............. 4

## RULES

Fed. R. Civ. P. 56(a) .............................................................................................................. 12

Pursuant to Fed. R. Civ. P. 56 and Local Rules 7(a), 7(b) & 7(h), Plaintiff Dylan Tokar ("Plaintiff"), by and through his undersigned counsel, hereby submits this Memorandum of Law in Opposition to the Motion for Summary Judgment filed by Defendant U.S. Department of Justice ("DOJ" or "Defendant") and in support of Plaintiff's Cross-Motion for Summary Judgment.  For the reasons set forth herein, this Court should deny Defendant's Motion for Summary Judgment ("Defendant's MSJ") and enter summary judgment in Plaintiff's favor.

## INTRODUCTION

This case concerns two requests submitted to DOJ by Dylan Tokar, a journalist with the trade publication *Just Anti-Corruption*, under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act").  Plaintiff's first FOIA request seeks records related to the corporate compliance monitor selection process for 15 companies that settled criminal charges brought by DOJ under the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-1, *et seq.* ("FCPA") (the "First FOIA Request").  *See* Declaration of Dylan Tokar (hereinafter "Tokar Decl.") ¶ 9, Ex. D. Plaintiff's second FOIA request seeks the disclosure of letters drafted by these 15 companies objecting to the release of information in response to the First FOIA Request (the "Second FOIA Request").  *See* Tokar Decl. ¶ 24, Ex. K.  Consistent with "[t]he basic purpose of FOIA … to ensure an informed citizenry, vital to the functioning of a democratic society . . . and to hold governors accountable to the governed," *NLRB v. Robbins Tired & Rubber Co.*, 437 U.S. 214, 242 (1978), Plaintiff seeks these records in connection with his reporting, in order to inform the public about DOJ's enforcement of the FCPA.

In responding to Plaintiff's requests, DOJ has repeatedly violated FOIA's requirements by ignoring statutory deadlines imposed by the Act and by improperly relying on FOIA Exemptions 4, 6, and 7(C) to withhold responsive, non-exempt information.  After Plaintiff

submitted his First FOIA Request, counsel for Defendant contacted Mr. Tokar, who was then

unrepresented by counsel, and led Plaintiff to believe that DOJ would not release material

responsive to Plaintiff's First FOIA Request, as drafted, but would release records responsive to

a narrower request.  Accordingly, in the interest of obtaining responsive documents, and doing so

as quickly as possible, Plaintiff offered, in good faith, to narrow his First FOIA Request to seek

records reflecting certain information: specifically, the names of the monitor candidates for the

15 corporations and their associated law or consulting firms, as well as the names and titles of

members of the DOJ Criminal Division's Standing Committee on the Selection of Monitors from

January 1, 2009 to the present.  Yet despite Plaintiff's willingness to cooperate with DOJ,

Defendant failed to hold up its end of the bargain; in blatant violation of its obligations under

FOIA, it never made a formal determination on Plaintiff's First FOIA Request, as narrowed, let

alone produced responsive records.

      In fact, after more than a year and a half of delay, and only in response to the filing of this

lawsuit, Defendant produced—not responsive records—but a two-page table to Plaintiff

purportedly in response to his First FOIA Request.  Key information sought by Plaintiff,

including the names of the monitor candidates, were redacted from that table.  *See* Declaration of

Peter C. Sprung, ECF No. 9-2, (the "Sprung Declaration" or "Sprung Decl.") ¶ 12 (citing FOIA

Exemptions 6 and 7(C)).  Further, the table was woefully inaccurate.  Defendant has *twice*

revised it to correct errors, and Plaintiff has no way of knowing whether Defendant's now-third

version of its table is accurate.  While he did not agree to it, Plaintiff would be satisfied with an

accurate, unredacted table that provides him with the specific, limited information that is the

subject of his First FOIA Request, as narrowed, in lieu of the underlying DOJ records reflecting

that information.  Indeed, had DOJ actually provided such a table to Plaintiff, the parties would

not be before this Court.  Yet it did not.  And Plaintiff's hypothetical willingness to accept a table of certain information in lieu of documents in satisfaction of his First FOIA Request does not relieve Defendant—which has not provided such a table—of its obligations under the Act.  DOJ is required to search for and provide Plaintiff with agency records responsive to Plaintiff's First FOIA Request, as narrowed.  And DOJ should not be permitted to use Mr. Tokar's good faith offer to narrow his First FOIA Request against him in this litigation.

As to the Second FOIA Request, Defendant produced the companies' responses to notices sent by the Criminal Division of DOJ to the 15 companies named in the First FOIA Request.  However, citing Exemption 6, DOJ withheld (1) the names of corporate compliance monitor candidates; (2) the names of private attorneys who responded to the notices on behalf of their clients, and (3) the name of one of the DOJ employees who received some of the responses.  Pls. SMF. ¶ 53.

Defendant now moves for summary judgment, asserting that the Sprung Declaration establishes that the Government conducted a sufficient search to locate records responsive to Plaintiff's FOIA requests and justifies the Government's withholding of information responsive to those requests.  The Sprung Declaration, however, cannot support summary judgment in DOJ's favor.  The corporate compliance monitor candidates, DOJ employees, and private attorneys have no privacy interest in the disclosure of their names and places of employment.  And even if such a privacy interest could be established, the public interest in understanding how DOJ enforces anti-corruption laws would significantly outweigh any minimal privacy interest that could possibly be asserted as to these individuals' names and job titles.

For the reasons set forth herein, Defendant's motion should be denied, and the Court should enter summary judgment in favor of Plaintiff.

3

## BACKGROUND

### A. Corporate Compliance Monitorships

After the government discovers and investigates a purported violation of the Foreign Corrupt Practices Act ("FCPA"), the corporation and the government may, in lieu of prosecution, enter into a Deferred Prosecution Agreement ("DPA") that requires the corporation to retain a "monitor" at its own expense to ensure compliance with the DPA and federal law.  Corporate compliance monitors are typically responsible for "(1) investigating the extent of wrongdoing already detected and reported to the government; (2) discovering the cause of the corporation's compliance failure; and (3) analyzing the corporation's business needs against the appropriate legal and regulatory requirements."  Veronica Root, *The Monitor-"Client" Relationship*, 100 VA L. REV. 523, 531 (2014).  Courts generally have no role in the process that results in the selection and retention of a monitor; the corporation itself often selects a corporate compliance monitor from a pool of candidates approved by DOJ.  *Id.* at 531–532.

The DOJ's selection process for corporate compliance monitors has not been without controversy.  Corporate compliance monitors are often former federal prosecutors employed by large law firms.  And, while the amount of fees paid to these monitors is usually undisclosed, fees for monitorships that last multiple years "probably run in the millions, if not tens of millions, of dollars."  Steven Davidoff Solomon, *In Corporate Monitor, a Well-Paying Job but Unknown Results*, N.Y. Times, Apr. 15, 2014, *available at* https://perma.cc/H8YF-CAYK (noting that "monitors are still picked in a rather murky way" and that "the monitors' work is almost never disclosed").  In 2008, DOJ launched an internal inquiry into its procedures for selecting corporate compliance monitors after then-U.S. Attorney Chris Christie approved a contract reportedly worth $28 million to $52 million for his former boss (and former U.S. Attorney General) John Ashcroft to serve as the compliance monitor for the medical device

company Zimmer Holdings.  *See* Philip Shenon, *Ashcroft Deal Brings Scrutiny in Justice Dept.*, N.Y. Times, Jan. 10, 2008, *available at* https://perma.cc/4ZLP-5WJA.

Following its internal inquiry, DOJ issued a memorandum that formally established principles for monitor selection.  *See* Memorandum from Craig S. Morford, Acting Deputy Att'y Gen., for Heads of Dep't Components and U.S. Att'ys (Mar 7, 2008) (hereinafter "Morford Memorandum"), *available at* https://perma.cc/DNV7-ESKT.  The Morford Memorandum laid out DOJ's administrative guidelines for the selection and use of monitors in connection with DPAs and non-prosecution agreements.  It includes, among other guidance, the requirement that the "corporation and the Government [] discuss the necessary qualifications for a monitor based on the facts and circumstances of the case" and "avoid potential and actual conflicts of interest" in the selection of corporate compliance monitors.  *Id.* at 3.  The Morford Memorandum lays out several mechanisms to achieve the goals of independence and avoidance of conflict-of-interest, including the creation of a "standing or *ad hoc* committee" within DOJ and a reminder to those involved in the selection process that they must comply with DOJ conflict-of-interest regulations.  *Id.* at 4.  More specifically, the Morford Memorandum calls for the selection of monitors through the use of a candidate pool "of at least three qualified monitor candidates" whenever possible.  *Id.*

Though the Morford Memorandum laid out several principles designed to safeguard the monitor selection process, members of Congress maintained that the administrative guidelines, which still control the selection process today, provide too much discretion to both DOJ officials and corporations.  *Deferred Prosecution: Should Corporate Settlement Agreements be Without Guidelines: Hearing Before the Subcomm. On Commercial & Admin. Law of the H. Comm. On the Judiciary*, 110th Cong. 312 (2008) (statement of Rep. William Delahunt stating that ethical

5

concerns arise "when you have a potential wrongdoer, which is the corporate entity, requesting or signing off on who is going to monitor compliance with the agreement").

## B. Plaintiff's FOIA Requests

Mr. Tokar is a reporter for *Just Anti-Corruption*, a trade publication for lawyers that covers DOJ and its investigations into violations of the FCPA.  In connection with his reporting on the process of corporate compliance monitor selection, Plaintiff seeks records from DOJ that would shed light on that practice, including whether DOJ was abiding by the principles for monitor selection set forth in the Morford Memorandum.

On April 24, 2015, Plaintiff submitted his first FOIA Request (the "First FOIA Request") to DOJ's Criminal Division.  Tokar Decl. ¶ 9, Ex. D.  The First FOIA Request sought:

(1) All documents submitted by counsel for the companies at the outset of each monitor selection process, including the names of up to three qualified monitor candidates whom the companies are allowed to recommend.  The information should identify which candidate, if any, the company specified as its first choice as monitor.

(2) All Monitor Selection Memoranda, including any files, documents, and attachments therein, submitted for review to the Standing Committee on the Selection of Monitors, and information about which monitors were approved or disapproved and the reasons therefore, including the recommendations submitted by the committee, the Assistant Attorney General for the Criminal Division, and the Office of the Deputy Attorney General.

(3) Records of the Standing Committee, including its membership, attendance records, appointments of temporary designees, voting records and recusals in connection with the consideration of monitor candidates for each of the [15] companies listed [herein].

*Id*.

Plaintiff's First FOIA Request requested a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  Plaintiff's Statement of Material Facts (hereinafter "Pls. SMF") ¶ 22.

Approximately two months after he submitted the First FOIA Request, Plaintiff was contacted by a DOJ Criminal Division lawyer, Peter Sprung, regarding that request.  Pls. SMF ¶ 23.  Mr. Sprung spoke with Plaintiff on June 23, 2015 and again on August 11, 2015.  At the time, Plaintiff was unrepresented by counsel.  Pls. SMF ¶¶ 24, 27.  During these conversations, Mr. Sprung indicated that he believed that FOIA Exemptions 5, 6, and 7(C) would be asserted by DOJ as a basis for withholding documents responsive to the First FOIA Request.  As a result of these discussions Plaintiff believed that he would not get materials responsive to the First FOIA Request without narrowing its scope.  Tokar Decl. ¶¶ 12–13.

In reliance on his conversations with Mr. Sprung, and in an effort to receive responsive material in a timely manner, Plaintiff on August 11, 2015 offered to narrow his First FOIA Request to seek records reflecting only the following:

(1) the names of up to three monitor candidates and their associated law or consulting firms submitted to the DOJ by the defendant corporations under the terms of their negotiated resolutions; and

(2) the names and titles of members of the Criminal Division's Standing Committee on the Selection of Monitors for the period of January 1, 2009 to the present.

Tokar Decl. ¶ 15, Ex. F; Pls. SMF ¶ 29.

Notwithstanding his willingness to narrow the First FOIA Request, Plaintiff repeatedly asserted his understanding that no privacy exemption under FOIA should apply to "the names of professionals or their firms under consideration for the award of a lucrative government-

mandated business contact."  Pls. SMF ¶ 29.

Despite narrowing the First FOIA Request, Plaintiff did not receive a response.  Mary Jacoby, editor at *Just Anti-Corruption*, spoke with Mr. Sprung on October 2, 2015; Mr. Sprung stated that, despite Plaintiff's offer to narrow his request, FOIA Exemptions 5 and 6 would likely still be asserted by DOJ as a justification for withholding material responsive to the Request, as narrowed.  Pls. SMF ¶ 31.  On November 10, 2015, Plaintiff emailed a letter to the chief of the Criminal Division's FOIA unit, stating that it had been more than 180 days since Plaintiff's First FOIA Request and that Plaintiff had not received any response.  Pls. SMF ¶ 32.

In December 2015, Mr. Sprung told Plaintiff that DOJ was required, pursuant to Executive Order 12,600 and DOJ's FOIA regulations, 28 C.F.R. § 16.8, to notify the companies affected by Plaintiff's request, to give the companies an opportunity to object to disclosure prior to disclosing records to Plaintiff.  Tokar Decl. ¶ 18.  On January 13, 2016, Mr. Sprung notified corporations identified by Plaintiff's First FOIA Request that the "the requester subsequently agreed to narrow the scope of the request to cover, among other things, names and associated law or consulting firms of the three candidates submitted by your company as part of the negotiated resolution of the criminal case" and provided companies with the opportunity to object to disclosure.  Tokar Decl. ¶ 19, Ex. H.

On February 2, 2016, counsel for Avon Products, Inc., ("Avon") one of the 15 companies that the First FOIA Request seeks information about, contacted Plaintiff by telephone and provided him with the name of Avon's corporate compliance monitor and the two unselected monitor candidates, as well as their firm affiliations.  Pls. SMF ¶ 34.  On February 3, 2016, counsel for Avon informed DOJ via letter that it "is not asserting that [the information requested in the First FOIA Request, as narrowed] is confidential business information."  Pls. SMF ¶ 35,

Tokar Decl. ¶ 21, Ex. I.  On February 24, 2016, Plaintiff e-mailed Mr. Sprung, attaching a copy of Avon's letter, and requested a final determination, noting that the statutory 20-day deadline (as well as any applicable 10-day extension) had long passed.  Pls. SMF ¶ 36.

On April 12, 2016, Plaintiff submitted the Second FOIA Request seeking disclosure of any objection letters received from corporations in response to Mr. Sprung's January 13, 2016 correspondence regarding the release of corporate monitorship records in response to the First FOIA Request.  Tokar Decl. ¶ 24, Ex. K.  Plaintiff's Second FOIA Request included a request for a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  Pls. SMF ¶ 37.

By letter dated April 18, 2016, DOJ acknowledged receipt of the Second FOIA Request. Pls. SMF ¶ 38.  On March 29, 2016, Plaintiff e-mailed the chief of the Criminal Division's FOIA unit to inquire about the First FOIA Request, noting that 11 months had passed since it was filed, and that Mr. Sprung had stopped responding to inquiries as to the status of the request.  Pls. SMF ¶ 39.  On May 26, 2016, attorney Alison Schary of Davis Wright Tremaine LLP sent a letter to the Criminal Division's FOIA unit on Plaintiff's behalf to inquire about the status of the First FOIA Request.  Pls. SMF ¶ 40.  On June 9, 2016, Ms. Schary spoke with Mr. Sprung by telephone; Mr. Sprung indicated he was "hopeful" that he would provide a final written determination within a week and agreed to also provide letters responsive to the Second FOIA Request.  Tokar Decl. ¶ 29.

### C.  Plaintiff's Lawsuit

Plaintiff did not receive a written determination as to the First FOIA Request or the Second FOIA Request, nor did he receive a determination as to his requests for fee benefit and fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).  Pls. SMF ¶¶ 42–43.  Having received no further communication from Mr. Sprung nor anyone else from

DOJ concerning the FOIA requests, and no records in response to either request, Plaintiff filed his Complaint in this lawsuit on December 9, 2016.  ECF No. 1.  Defendant filed its answer on February 28, 2017.  ECF No. 9.

On or about January 27, 2017, Defendant provided Plaintiff with a table purportedly in response to the First FOIA Request, as narrowed; DOJ redacted certain information from that table, asserting Exemptions 6 and 7(C).  *See* Status Report and Proposed Schedule, ECF No. 7, at ¶ 4.  In particular, DOJ redacted the names of corporate compliance monitor candidates who were not selected, several of the law and/or consulting firms these candidates work for, and the names of two members of the DOJ Standing Committee.  Defendant's Statement of Material Facts (hereinafter "Defs. SMF") ¶ 8.

After Plaintiff contacted counsel for DOJ to point out several inaccuracies in the table, Pls. SMF ¶ 46, DOJ informed the Court it had "since determined that the table that has been released requires certain corrections" and stated it would release a corrected table to Plaintiff within 30 days.  ECF No. 7 at 2.  On April 14, 2017, Defendant provided Plaintiff with a revised table.  Pls. SMF ¶ 48.  On April 17, 2017, counsel for Plaintiff contacted DOJ counsel to inquire about factual inaccuracies that Plaintiff had identified in the "corrected" table.  Pls. SMF ¶ 49.  On July 10, 2017, DOJ notified Plaintiff's counsel that it had again "identified certain errors in those tables."  Pls. SMF ¶ 50.  On the same day, Defendant provided Plaintiff with another revised table—the third—with the same information redacted pursuant to Exemptions 6 and 7(C).  Pls. SMF ¶ 51.

On May 22, 2017, in response to Plaintiff's Second FOIA Request, Defendant provided Plaintiff with copies of responses to submitter notices that the DOJ's Criminal Division sent to the 15 companies identified in the First FOIA Request.  Defs. SMF ¶ 14.  DOJ withheld certain

information from those records, asserting Exemptions 4, 6 and 7(C).  *Id.*  Citing Exemptions 6 and 7(C), DOJ withheld (1) the names of corporate compliance monitor candidates; (2) the names of private attorneys who responded to the notices on behalf of their clients; and (3) the name of one of the DOJ employees who received some of the responses.  DOJ also withheld several paragraphs from one response, asserting Exemption 4.  *Id.*; Pls. SMF ¶ 53.

On July 19, 2017, Defendant provided Plaintiff with a "supplemental" response to Plaintiff's Second FOIA Request.  Defs. SMF ¶ 14.  DOJ's supplemental response was nearly identical to its first, except that Defendant withdrew its reliance on Exemption 7(C), instead relying solely on Exemption 6 to justify those withholdings.  *Id.*

## LEGAL STANDARDS

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act"), was enacted to create an enforceable right of "access to official information long shielded unnecessarily from public view."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  There is no dispute that ensuring public access to "information material for monitoring the Government's activities is the core purpose of the FOIA."  *Arieff v. Dep't of Navy*, 712 F.2d 1462, 1468 (D.C. Cir. 1983) (citation and internal quotation marks omitted).  FOIA requires that agency records be made "promptly available" upon request unless they fall within one of the Act's nine enumerated exemptions.  5 U.S.C. § 552(a)(3), (b).

"Consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass."  *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989); *FBI v. Abramson*, 456 U.S. 615, 630 (1982) ("FOIA exemptions are to be narrowly construed[.]").  And courts "'impose a substantial burden on an agency seeking to avoid disclosure'" on the basis of a FOIA exemption.  *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (citations omitted).  An agency's showing will not avail if it "merely recit[es]

statutory standards" or is "too vague or sweeping." *Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000) (quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998)).

FOIA cases are frequently decided on motions for summary judgment.  *See Defenders of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 87 (D.D.C. 2009); *Bigwood v. United States Agency for Int'l Dev.*, 484 F.Supp.2d 68, 73 (D.D.C. 2007).  Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under FOIA, the agency bears the burden of establishing that its withholding of records, or portions thereof, is proper. *Campbell*, 164 F.3d at 30 ("an agency bears the burden to justify exemptions under FOIA"); *see also* 5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action.").  If the record fails to establish that the agency's withholdings are justified, "summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The agency's actions are reviewed by the district court *de novo*.  5 U.S.C. § 552(a)(4)(B).

## ARGUMENT

I.      **Plaintiff is entitled to agency records responsive to his First FOIA Request, as narrowed.**

Plaintiff submitted the First FOIA Request seeking the following records related to the investigations of 15 companies that settled FCPA charges with DOJ:  (1) all documents submitted by counsel for the 15 companies in the monitor selection process, including the three qualified candidates; (2) all monitor selection memoranda in the selection of candidates by DOJ Standing Committee on the Selection of Monitors; and (3) records of the Standing Committee including its membership, attendance, and voting records.  Tokar Decl. ¶ 9, Ex. D.  Following two discussions with DOJ counsel in which Plaintiff was told repeatedly that DOJ would assert a

number of FOIA exemptions as a basis for withholding records responsive to Plaintiff's First FOIA Request, Plaintiff—who was, at the time, not represented by counsel—offered to narrow his Request in an effort to obtain responsive material as quickly as possible. Pls. SMF ¶¶ 23–29, Tokar Decl. ¶ 15, Ex. F. The First FOIA Request, as narrowed, seeks records reflecting "[t]he names of the up to three monitor candidates and their associated law or consulting firms submitted to the department by the defendant corporations under the terms of their negotiated resolutions [; and] (2) [t]he names and titles of members of the Criminal Division's Standing Committee on the Selection of Monitors for the period Jan. 1, 2009 up through the present date. Along with the names of the members of the committee, please give their dates of service. We also request that you release the names of any temporary designees appointed to the committee and their dates of service." Tokar Decl. ¶ 15, Ex. F.

Plaintiff took these actions in good faith in order "to help ensure that [the information DOJ would provide would be] both easy to produce and undeniably responsive" to the First FOIA Request. Pls. SMF ¶ 36. Yet Defendant now seeks to turn Plaintiff's offer to reduce the amount of work required of DOJ against him; DOJ contends for purposes of this litigation that "the request, as narrowed, did not seek the production of documents and was not even a proper FOIA request." Def. Mot. at 3. Defendant provides no support for its assertion that the First FOIA Request, as narrowed at the urging of DOJ, was "not even a proper FOIA request"—nor could it. FOIA "obligates [agencies] to provide access to [records] which it has in fact created and retained." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980). Indeed, the Sprung Declaration contradicts DOJ's disingenuous argument altogether. *See* Sprung Decl. ¶ 8 (describing the narrowed request and noting that "Plaintiff's request [as

narrowed] was assigned request number CRM-300486158" for processing).

Individuals seeking records under FOIA should be *encouraged* to confer with responding agencies and, where possible, negotiate options that will provide the requester with the specific information he or she seeks while simultaneously limiting any perceived burden faced by the agency.  This is precisely what Plaintiff did here; he responded to DOJ's purported concerns about the scope of his First FOIA Request by offering to narrow it.  Defendant accepted that offer, yet then failed to provide *any* response to Plaintiff's Request over the course of 20 months. Moreover, after Plaintiff was forced to file this lawsuit to obtain records responsive to the First FOIA Request, as narrowed, DOJ released a "table" in which significant portions of the information sought by Plaintiff were redacted pursuant to Exemptions 6 and 7(C).  To make matters worse, the table contained significant inaccuracies; Defendant has now twice revised the table to correct its own mistakes, and Plaintiff has no way to know whether the most recent table produced by Defendant is accurate.  Pls. SMF ¶¶ 46, 49; Tokar Decl. ¶ 40.

Although he did not agree to it, Plaintiff would have been satisfied with an accurate, unredacted table providing only the specific information that is the subject of his First FOIA Request, as narrowed, in lieu of responsive records.  DOJ, however, did not provide that. Accordingly, Defendant must process and release the records responsive to Plaintiff's First FOIA Request, as narrowed, in accordance with FOIA.

## II. Plaintiff is entitled to summary judgment in his favor because neither FOIA Exemption 6 nor 7(C) permit DOJ to withhold the names sought by Plaintiff.

The central legal issue before this Court is whether—regardless of the format in which responsive material is provided to Plaintiff—the information redacted by DOJ in both the table, and in the records released, in part, in response to Plaintiff's Second FOIA Request, can properly

be withheld under Exemptions 6 and 7(C).[1]

For the First FOIA Request, Plaintiff challenges DOJ's assertion of Exemptions 6 and 7(C) as justification for withholding the names of all corporate compliance monitor candidates who were not selected for a particular monitorship, some of the professional services firms those candidates are associated with, as well as the name of two DOJ employees who served on the DOJ's Standing Committee on the Selection of Monitors.  For the Second FOIA Request, Plaintiff challenges DOJ's assertion of Exemption 6 as justification for withholding the names of corporate compliance monitor candidates, the names of private attorneys who responded to the submitter notices on behalf of their clients, and the name of a DOJ employee who received the responses.  None of these withholdings is permitted under FOIA.

Exemption 6 applies to "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement" to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

In the context of Exemption 6, the D.C. Circuit has made clear that there is a "presumption in favor of disclosure [that] is as strong as can be found anywhere in the Act." *Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation and internal quotation marks omitted).  As to personal information in particular, and given the "presumption of openness inherent in FOIA," *Campbell*, 164 F.3d at 33, Exemption 6 permits withholding records or information therein *only* if "disclosure would compromise a substantial, as opposed to

---

[1] Defendant also made one redaction pursuant to Exemption 4.  Although Plaintiff does not concede that Defendant's withholding of this material pursuant to Exemption 4 is proper, Plaintiff has chosen not to challenge this withholding.

a *de minimus*, privacy interest." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873,

874 (D.C. Cir. 1989).  In determining what constitutes a "substantial" privacy interest, the Court

must "balance the individual's right of privacy against the basic policy of opening agency action

to the light of public scrutiny." *Nat's Ass'n of Home Builders v. Norton*, 309 F.3d 26, 31, 32

(D.C. Cir. 2002) (citation and internal quotation marks omitted).  If disclosure would implicate a

substantial privacy interest, the court "must weigh that privacy interest in non-disclosure against

the public interest in the release of the records in order to determine whether, on balance,

disclosure would work a clearly unwarranted invasion of personal privacy." *Nat'l Ass'n of*

*Retired Fed. Employees*, 879 F.2d at 874.  Similarly, under Exemption 7(C), "a court must

balance the public interest in disclosure against the interest Congress intended the Exemption to

protect." *United States Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S.

749, 776 (1989).

Under Exemptions 6 and 7(C), a court first determines if there is a substantial privacy

interest in the information to be disclosed.  *See Am. Civil Liberties Union v. U.S. Dep't of*

*Justice*, 655 F.3d 1, 6–7 (D.C. Cir. 2011).  If the court finds such a privacy interest, the next step

is to balance that interest against the public interest, "focus[ing] on 'the citizens' right to be

informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276,

1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).

Defendant's sweeping utilization of Exemption 6 and/or 7(C) to reflexively redact the

names and job titles of (1) corporate compliance monitor candidates; (2) attorneys who drafted

submitter notice responses to the DOJ; and (3) DOJ employees, is improper.  The DOJ has failed

to show that these individuals have *any* privacy interest, let alone a substantial one, that would

outweigh the significant public interest in this information.  Where, as here, "'no significant

16

privacy interest is implicated . . . FOIA demands disclosure.'" *Multi Ag Media LLC*, 515 F.3d at

1229 (quoting *Nat'l Ass'n of Retired Fed. Employees*, 879 F.2d at 874).

> **A.  DOJ does not and cannot show that disclosure of the names of corporate
> compliance monitor candidates and their respective professional services
> firms would constitute an "unwarranted invasion of personal privacy."**

Defendant has improperly withheld the names of corporate compliance monitor

candidates and, in some instances, the professional services firms to which these individuals

were associated.  Defendant has withheld this information in two locations:  the table Defendant

provided purportedly in response to Plaintiff's First FOIA Request, and the responses to

submitter notices produced in response to Plaintiff's Second FOIA Request.  Defendant relies on

both Exemptions 6 and 7(C) as justification for redacting the names of corporate monitor

candidates in the table, but only relies on Exemption 6 as justification for redacting the same

information from the responses to submitter notices produced in response to Plaintiff's Second

FOIA Request.  Despite this inconsistency, it is clear from the case law in this Circuit that

corporate compliance monitor candidates have no privacy interest in the disclosure of their

names that can satisfy the threshold requirement of either Exemption 6 or 7(C).

At the outset, Exemption 6 "does not categorially exempt individuals' identities."

*Judicial Watch, Inc. v. Food  Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006); *see also News-

Press v Dep't of Homeland Sec.*, 489 F.3d 1173, 1199 (11th Cir. 2007).  "The scope of a privacy

interest under Exemption 6 will always be dependent on the context in which it has been

asserted."  *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996).

Defendant has withheld the names of corporate compliance monitor candidates; yet disclosure of

the fact that an individual was considered for a monitorship position does not constitute a clearly

unwarranted invasion of privacy.  Indeed, DOJ fails to establish that corporate compliance

monitor candidates have any privacy interest whatsoever in the fact of their candidacy for such an appointment.

Courts have held that FOIA does not automatically shield the disclosure of information such as employment history, activities, and qualifications contained in the CVs or applications for government jobs or funds.  *See, e.g., Physicians Comm. for Responsible Medicine v. Glickman*, 117 F. Supp. 2d 1 (D.D.C. 2000); *Kurzon v. Dep't of Health & Human Servs.*, 649 F.2d 65, 69 (1st Cir. 1981).  Noting that applicants for a government advisory committee were not "given assurances of confidentiality," the court in *Physicians Committee* determined that the approximately 140 individuals who were nominated but ultimately not appointed to the committee did not have a privacy interest in the release of their names or employment background.  *Physicians Committee*, 117 F. Supp. at 6 (noting that any "asserted stigma of rejection is significantly diluted" where many others were also nominated and not appointed).  Similarly, the First Circuit in *Kurzon* ordered the disclosure of names and business addresses of unsuccessful federal National Cancer Institute grant applicants, finding persuasive the fact that applicants had no expectation that their efforts to secure a government-funded grant would remain private.  649 F.2d at 69 (holding that "federal grant applicants cannot reasonably expect that their efforts to secure government funds, especially in a field so much in the public eye as cancer research, will remain purely private matters.").

Though Defendant argues that corporate compliance monitor candidates not selected for a particular monitorship may face "potential harm or embarrassment" from the disclosure of that fact, Def. Mot. at 7, the selection of a different monitor is not enough to implicate privacy concerns where the resulting rejection "is not so rare an occurrence as to stigmatize" other candidates.  *Kurzon*, 649 F.2d at 69.  This is particularly true where, as here, "approximately

twice as many applications are rejected as are not." *Id*. Withholding information to prevent purely speculative harm is contrary to FOIA's policy favoring disclosure. *Dep't of Air Force v. Rose*, 425 U.S. 352 at 380 n. 19.

Defendant also withheld the names of the professional services firm at which a candidate worked when the size of that firm was such that its disclosure would enable Plaintiff to identify the candidate who was not selected for a particular monitorship. Def. Mot. at 7. DOJ's arguments here are unavailing for the same reasons identified above: corporate compliance monitor candidates simply do not have a privacy interest in the fact that they were nominated for, but did not receive, a monitorship appointment, and do not have a privacy interest in the name of their employer. *Physicians Committee*, 117 F. Supp. at 6.

The sole case cited by Defendant in support of its position that the corporate compliance monitor candidates have a valid privacy interest in the disclosure of their names in response to Plaintiff's FOIA requests—*Neary v. FDIC*, 104 F. Supp. 3d 52, 57–58 (D.D.C. 2015)—is inapposite. *Neary* concerned a FOIA request for personnel files for unsuccessful applicants to a government employee program that contained personal information well beyond mere names of applicants. *Id.* Further, the district court in *Neary* concluded that the plaintiff did not show sufficient public interest to overcome the privacy interest in such information, which included home addresses, interview dates, and the hiring status of applicants.

Indeed, Defendant fails to make any argument whatsoever as to why corporate compliance monitor candidates would have a privacy interest in their name and place of work being associated with their candidacy for a monitorship beyond "the potential harm or embarrassment in disclosing the names of unsuccessful applicants for federal employment." Def. Mot. at 7. As an initial matter, these individuals are not applying for "federal employment";

corporate compliance monitors are employed by professional services firms paid by the companies who have settled FCPA charges with DOJ. Solomon, *supra* p. 4. Further, the individuals nominated to be corporate compliance monitors are distinguished attorneys—many are former federal prosecutors—who have built their careers on advising corporations in high-profile FCPA and other government investigations. These attorneys handle a number of matters at once for a variety of clients; because they maintain employment with their respective firms whether or not they are selected as a corporate compliance monitor in any given case, these individuals are not "job applicants" in the traditional sense of the term. In fact, being nominated for multiple high-profile monitorships is likely to *advance* their careers and reputations, even when they are not ultimately selected for a position. Revealing their names simply does not implicate the same issues presented by the disclosure of information about unsuccessful job applicants who may have an interest in preventing their current employers from learning that they wanted to leave their jobs and had sought employment elsewhere. *See, e.g., Core v. United States Postal Service*, 730 F.2d 946, 948 (4th Cir. 1984).

The remaining cases Defendant cites in support of its argument relate to DOJ's decision to withhold the names of the professional services firms at which corporate compliance monitor candidates worked when it determined that the size of the firm was such that its disclosure could allow the public to identify the candidate. Def. Mot. at 7. Defendant argues that "[c]ourts recognize that the disclosure of employment information—such as the type that might typically appear on a resume or job application—is properly withheld under Exemption (b)(6) and (b)(7)(C) when its disclosure would risk identifying the applicant *whose privacy rights are [] implicated*." Def. Br. at 7 (emphasis added). This is key—in these cases, courts have declined to release certain identifiable information *after a privacy right has been established. See, e.g.,*

*Carter v. United States Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987).  In *Carter*, the plaintiff had *acknowledged* the privacy interest of individuals who had been investigated for attorney misconduct (but for which no charges of misconduct were ever lodged).  *Id.* at 391.  The D.C. Circuit thus declined to permit disclosure of related information which may have proven enough to identify the investigated attorneys, who had an established privacy interest in not being revealed as the subjects of closed misconduct investigations.  *Id.*  No such facts exist here. These candidates have no privacy interest in the release of their names (or the professional services firm they are associated with) in connection with their role as finalists for FCPA monitorships.

     *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 37 (D.D.C. 2000) is equally unpersuasive.  In *Judicial Watch*, defendant sought to withhold certain resumes of company executives applying for export insurance for goods and services exported to China.  *Id.* Notably, the district court ruled that disclosure of certain resumes was proper where, as here, "the information sought [] is not derogatory and serves a public interest" and, where "the slight infringement of personal privacy is weighed against the public interest[,]" the scale "tips in favor of disclosure."  *Id.* at 37–38.  Similarly, in *Core*, 730 F.2d at 948, the Fourth Circuit determined that unsuccessful applicants for positions with the United States Postal Service had a privacy interest where "the disclosure that they wished to leave their former employment [could] embarrass them," and held that redacting the names from unsuccessful applications could still result in their identification.  *Id.*  Again, the risk of embarrassment contemplated in *Core* is simply not at play here—as detailed above, corporate compliance monitor candidates are not "applying" for the monitorship in the traditional sense of the term; these highly-accomplished attorneys maintain their employment with their professional services firms regardless of whether

or not they are appointed to a particular monitorship.  DOJ's position finds no support in either common sense or this Circuit's case law.

> **B.  DOJ does not and cannot show that disclosure of the names of DOJ employees who served on the Standing Committee would constitute an "unwarranted invasion of personal privacy."**

Defendant redacted the names of two DOJ employees from the table it produced purportedly in response to Plaintiff's First FOIA Request, as narrowed, asserting Exemptions 6 and 7(C) and claiming that "lower level [DOJ] managers have an expectation of privacy in their identity that was not overcome by any limited public interest that might exist in knowing the names of selection committee members."  Def. Mot. at 8.  Defendant also redacted the name of one DOJ employee from one of the letters produced in response to Plaintiff's Second FOIA Request, asserting Exemption 6.  Def. Mot. at 11.  Defendant's reliance on Exemptions 6 and/or 7(C) to withhold the names of these public employees is misplaced.

"A name and work telephone number is not personal or intimate information, such as a home address or a social security number, that normally would be considered protected information under FOIA Exemption 6."  *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005).  In *Leadership Conference*, the district court rejected the DOJ's invocation of Exemption 6 to withhold the names and work telephone numbers of Justice Department paralegals.  Here, again, Plaintiff has *not* requested contact information for any DOJ employees, and Defendant is withholding *only* their names and job titles.  Defendant attempts to redact this information for all purported "lower level" employees mentioned in the records, without setting forth any privacy interest beyond "an expectation of privacy in their identity."

Def. Mot. at 8.[2]  Defendant's blanket assertions that disclosure of their names would constitute an unwarranted invasion of personal privacy are insufficient, and Defendant fails to establish that these government employees have any privacy interest in the mere fact of their employment by a government agency, and their involvement in the selection of corporate compliance monitors.

Defendant's reliance on *Horowitz v. Peace Corps.*, 428 F.3d 271, 278 (D.C. Cir. 2005) is misplaced, as is clear from DOJ's own description of the case.  As discussed in *Horowitz*, the Supreme Court has held that Exemption 6 can properly be asserted to "shield the names *and home addresses* of agency employees from being released to unions that requested the lists under FOIA."  *Id.* (emphasis added).  Here, however, DOJ has redacted the names and job titles—not home addresses—of members of its Standing Committee.  The remaining two cases cited by DOJ are equally unhelpful to its cause; in both cases, the D.C. Circuit concluded that names *and contact information* of government employees could be withheld where their privacy interest was sufficient to outweigh public interest in the information.  *See Fed. Labor Relations Auth. v. United States Dep't of Treasury*, 884 F.2d 1446, 1452 (D.C. Cir. 1989); *Painting and Drywall Work Preservation Fund v. HUD*, 936 F.2d 1300, 1303 (D.C. Cir. 1991).[3]

---

[2] It is unclear upon what basis DOJ asserts that the Standing Committee Members redacted from the table are "lower level" DOJ employees; the job titles for employees whose names were redacted are Deputy Chief, Fraud Section and Acting Chief, Fraud Section.

[3] In a footnote, Defendant argues that "[c]ourts also recognize that private parties have a privacy interest when their names appear in government records."  Def. Br. at 9, fn. 2.  But DOJ employees are not "private parties" for purpose of this analysis; they are public officials who appear in government records as government actors involved in the investigation and enforcement of federal law.  Moreover, the D.C. Circuit has recognized that public officials "may have a somewhat diminished privacy interest" when they accept a public appointment.  *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092 (D.C. Cir. 2014).

### C.  DOJ does not and cannot show that disclosure of the names of counsel for corporations responding to submitter notices would constitute an "unwarranted invasion of personal privacy."

Plaintiff's Second FOIA Request sought the written responses that the Criminal Division received to the submitter notices it sent out to certain specified companies following Plaintiff's First FOIA Request.  Defendant, asserting Exemption 6, has categorically withheld the names of private attorneys who drafted, on behalf of their clients, responses to the submitter notices, without demonstrating that these individuals have a privacy interest in their position as counsel to these corporations.

In the context of Exemption 6, the D.C. Circuit has made clear that there is a "presumption in favor of disclosure [that] is as strong as can be found anywhere in the Act." *Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation and internal quotation marks omitted).  Given the "presumption of openness inherent in FOIA," *Campbell*, 164 F.3d at 33, Exemption 6 allows withholding records only if disclosure will cause a "*clearly* unwarranted invasion of personal privacy." *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984) (emphasis in original) (citation and internal quotation marks omitted); 5 U.S.C. § 552(b)(6).

The case law in this Circuit points solidly toward disclosure.  In *Landmark Legal Foundation v. IRS*, 87 F. Supp. 2d 21, 27–28 (D.D.C. 2000), this Court held that Exemption 6 does not extend to the names of people who write to the IRS to express opinions or provide information.  Likewise, in *Judicial Watch of Florida v. Dep't of Justice*, 102 F. Supp. 2d 6 (D.D.C. 2000), in which the plaintiff sought correspondence with DOJ about "Independent Counsel Act matters," among other things, the Court stated that although an individual might have a privacy interest in non-disclosure of his or her identity, "such information might well shed light on an agency's performance of its statutory duties, which is the very purpose of FOIA and is at the heart of the public's interest in disclosure." *Id.* at 18.  Because the agency failed to

make a specific showing that the possible privacy interest outweighed the public interest, the court denied the agency's motion for summary judgment. *Id.* Here, Defendant has failed to show that an individual who corresponded with the government on behalf of their client in response to a submitter notice had any expectation of privacy or that any such individual would be subject to harassment or abuse if his or her name were disclosed.

Indeed, the Government barely addresses this argument at all. Defendant's *Vaughn* Index, in particular, fails to make any showing that the release of the names of the attorneys who drafted these letters to DOJ are the kinds of "intimate details" or "damaging information" that implicate significant privacy concerns. *National Ass'n of Home Builders v. Norton*, 309 F. 3d 26, 33 (D.C. Cir. 2002); *see also COMPTEL v. FCC*, 910 F. Supp. 2d 100, 124 (D.D.C. 2012) (stating that courts can uphold redaction of personal identifying information under Exemption 6, but "the agency must at least provide the Court with some basis for such an interest").

In the context of Exemption 7(C), this Court has recently held that an agency's "failure to establish the different privacy interests at stake makes it impossible for the Court to balance the private interests with the public's interest in knowing 'what their government is up to.'" *100Reporters LLC v. U.S. Dep't of Justice*, 2017 WL 1229709 (D.D.C. Mar. 31, 2017) (quoting *Reporters Comm.*, 489 U.S. at 773).

### D. The public interest in disclosure outweighs any individual privacy concerns.

Even if corporate monitor candidates, DOJ employees, and attorneys who responded to the notices sent by DOJ on behalf of their clients had substantial, as opposed to a *de minimus*, privacy interest in the public release of their names (which, as shown above, they do not), the court must balance "whether the public interest in disclosure outweighs the individual privacy concerns." *Nat'l Ass'n of Home Builders*, 309 F.3d at 35. DOJ has not, and could not,

demonstrate that this balance of interests favors withholding.

Despite Defendant's attempt to brush aside the public's strong interest in the information sought via Plaintiff's FOIA requests, DOJ's selection process for corporate compliance monitors goes to the heart of the agency's performance of its statutory duties.  Prosecutorial decisions to enter into DPAs rather than pursue indictments of corporate defendants are often controversial, and both journalists and members of Congress have noted that the practice creates opportunities for abuse.  *See, e.g., Deferred Prosecution: Should Corporate Settlement Agreements be Without Guidelines: Hearing Before the Subcomm. on Commercial & Admin. Law of the H. Comm. on the Judiciary*, 110th Cong. 312 (2008) (statement of Rep. William Pascrell) (urging that Congress should ensure the independence of corporate monitors by "establish[ing] safeguards and eliminate[ing] the culture of favoritism and political interference that permeates these corporate monitor agreements"); *see also* Alison Frankel, *DOJ Should End Secret Selection Process for Corporate Watchdogs*, Reuters, July 14, 2014, *available at* https://perma.cc/T3N2-QRPR.

As the D.C. Circuit explained in *Jurewicz v. USDA*, 741 F.3d 1326, 1333–34 (D.C. Cir. 2014), "The proper inquiry," in evaluating public interest, "is whether the information 'sheds light' on government activities and whether it would 'appreciably further' public understanding of the government's actions."  Particularly in cases involving violations of anti-corruption laws, the public has a strong interest in knowing exactly who is involved in the corporate compliance monitor selection process, including both who is nominated for these positions and who is evaluating those candidates.  Without knowing who is responsible for DOJ's enforcement of the FCPA, the public has little hope of holding the government accountable for that task.

The balancing test favors disclosure where, as here, the purpose of the disclosure "is to

understand the agency's selection process." *Physicians Comm. for Responsible Med.*, 117 F.

Supp. 2d at 6.  In these such instances, "[k]nowing who was selected and who was not, and

learning their qualifications and affiliations," advances knowledge about the Government's

selection process.  *Id.*  This identifying information will help fulfill "the purpose of FOIA to

permit the public to decide for itself whether [the agency] action is proper."  *Wash. Post v. HHS*,

690 F.2d 252, 264 (D.D.C. 1982).

Defendant cites *National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) to

suggest that the public interest side of the balance may be advanced only through evidence of

wrongdoing.  Def Br. at 6-7.  But this argument is backwards.  As the Court noted in *Favish*,

FOIA has a "prodisclosue purpose," and a balancing exercise is required before that presumption

of openness can be overcome.  *Id.* at 159.  Courts have recognized that even insight into agency

functions not involving malfeasance or wrongdoing support a public interest showing under

Exemptions 6 and 7(C), and tilt the balance toward disclosure.  In the context of Exemption

7(C), the D.C. Circuit has recognized that a "relevant public interest in the FOIA balancing

analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an

agency's performance of its statutory duties' or otherwise let citizens know 'what their

government is up to.'"  *Citizens for Responsibility & Ethics in Washington*, 746 F.3d at 1093

(brackets in original).  "Indeed, we have repeatedly recognized a public interest in the manner in

which the DOJ carries out substantive law enforcement policy (whether or not that interest

outweighs any privacy interest at stake in a given case)."  *Id.* (collecting cases).  This public

interest extends to understanding how the government performs its role, even in the absence of

specific allegations of misconduct or malfeasance.  *See Am. Civil Liberties Union v. U.S. Dep't*

*of Justice*, 655 F.3d at 13 (the public interest established in DOJ's justification for use of

warrantless cell phone tracking).

Given the minimal privacy interests at stake here, the public interest in disclosure of these individuals' identifying information clearly tips the scale in favor of disclosure. *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893–94 (D.C. Cir. 1995). Defendant lays out the relevant standard in their motion for summary judgment, and Plaintiff agrees: public interest is clearly met where, as here, "disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v, Federal Deposit Insurance Corp.*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *United States Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994)). The selection of corporate compliance monitors is a controversial practice which has been subject to scrutiny by both journalists and members of Congress; shedding light on the process would only serve to assist the public in understanding what DOJ is up to.[4]

## CONCLUSION

For the foregoing reasons, Defendant's MSJ should be denied, and the Court should enter summary judgment in favor of Plaintiff.

Dated:  August 23, 2017

Respectfully submitted,

*/s/ Bruce D. Brown*
Bruce D. Brown
DC Bar No. 457317
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, D.C. 20005

---

[4] To narrow the issues before this Court, Plaintiff does not challenge DOJ's assertion of Exemption 4 to withhold a single portion of a letter produced in response to Plaintiff's Second FOIA Request and informed Defendant of this decision well before Defendant filed their motion for summary judgment.  Defs. SMF ¶ 15.  Nevertheless, Defendant dedicates more than four pages to argument in support of that withholding.  Def. Mot. at 10, 12–15.

Phone:  202.795.9300
Facsimile:  202.795.9310
E-mail: bbrown@rcfp.org

*Of Counsel for The Reporters Committee*
*for Freedom of the Press:*

Jennifer A. Nelson
DC Bar No. 1011387
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, D.C. 20005
Phone:  202.795.9300
Phone:  202.795.9300
Facsimile:  202.795.9310
E-mail: jnelson@rcfp.org