IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DYLAN TOKAR,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>        Defendant. | Civil Action No. 16-cv-2410 (RC) |

**PLAINTIFF'S COMBINED STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE AND
RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 7(h), Plaintiff Dylan Tokar ("Plaintiff" or "Tokar") hereby submits his combined statement of material facts as to which there is no genuine issue and response to the statement of material facts submitted by Defendant United States Department of Justice ("Defendant" or "DOJ") ("Defendant's SMF").[1]

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

    1–2.    Undisputed.

    3.    Disputed in part.  Undisputed that Plaintiff narrowed his request on August 11, 2015.  Disputed that Plaintiff narrowed his request "in a manner that no longer sought the release of the actual documents identified in the original request[.]"

    4.    Undisputed.

    5.    Undisputed that Mr. Tokar sent an e-mail dated February 24, 2016 to DOJ, the

---

[1] The numbered paragraphs in Plaintiff's response, below, correspond to those in the Defendant's SMF.

1

content of which is reflected in Exhibit 6 to the Complaint. To the extent Defendant's SMF ¶ 5 is intended to "reiterate" Defendant's assertion that Mr. Tokar narrowed his request "in a manner that no longer sought the release of the actual documents identified in the original request," *see* Defendant's SMF ¶ 3, it is disputed.

6.  Disputed. Plaintiff's narrowed request sought agency records reflecting certain information specified by Plaintiff. DOJ did not "reasonably respond[] to the FOIA request by creating a table that contained the requested information." The table created by DOJ did not contain the information specified in Plaintiff's request, as narrowed, because much of that information was redacted by DOJ. Further, the table created by DOJ was inaccurate; it has since twice been corrected by DOJ. To the extent that Defendants' SMF ¶ 6 contains argument and/or conclusions of law as to what constitutes a "reasonabl[e] respon[se]" to Plaintiff's FOIA Request, as narrowed, they should be disregarded by the Court.[2]

7.  Disputed in part. Undisputed that DOJ released a table to Plaintiff by letter dated January 24, 2017, and that DOJ provided a revised table on April 14, 2017. Disputed that the version of the table produced on July 10, 2017 is "final," as Plaintiff has no means of verifying its accuracy. To the extent that Defendant's SMF ¶ 7 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2.

8.  Disputed in part. Disputed that the tables released to Plaintiff were properly

---

[2] *See* Local Rule 7(h)(1) (stating that a motion for summary judgment "shall be accompanied by a statement of material *facts* as to which the moving party contends there is no genuine issue[.]" (emphasis added); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996) (rejecting assertion that "relevant facts" section of opposition memorandum satisfied then-applicable Rule 108(h) governing statements of undisputed material facts for, among other things, "repeatedly blending factual assertions with legal argument"); *Robertson v. Am. Airlines, Inc.*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002) (rejecting statement of material facts as complying with this Court's local rules because it incorporated a memo that "liberally mixe[d] facts with argument").

redacted "pursuant to Exemption (b)(6) and (b)(7)(C)." To the extent that Defendant's SMF ¶ 8 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2. Otherwise undisputed.

9–13.   Undisputed.

14.   Disputed in part. Disputed that Defendant has properly withheld "certain information" under FOIA Exemptions 6 and 7(C). To the extent that Defendant's SMF ¶ 14 contains argument and/or conclusions of law, they should be disregarded by the Court. *See supra* note 2. Otherwise undisputed.

15.   Undisputed.

16.   Disputed. Defendant's SMF ¶ 16 consists solely of argument and a disputed conclusion of law, which should be disregarded by the Court. *See supra* note 2.

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

17.   On January 10, 2008, *The New York Times* published the following article: Philip Shenon, *Ashcroft Deal Brings Scrutiny in Justice Dept.*, N.Y. Times, Jan. 10, 2008, obtained from http://www.nytimes.com/2008/01/10/washington/10justice.html. Tokar Decl. ¶ 5, Ex. B. The article describes an internal inquiry launched by the Department of Justice after then-United States Attorney Christopher Christie awarded former Attorney General John Ashcroft, his onetime boss, with an 18-month contract for $28 million to $52 million to monitor a large corporation willing to settle criminal charges out of court. *Id.*

18.   In response to the Department of Justice's internal inquiry on the subject, Congress held a hearing in 2008 titled *Deferred Prosecution: Should Corporate Settlement Agreements be Without Guidelines: Hearing Before the Subcomm. On Commercial & Admin. Law of the H. Comm. On the Judiciary*, 110th Cong. 312 (2008). Tokar Decl. ¶ 6.

19. On March 7, 2008, then-Acting Deputy Attorney General Craig S. Morford issued a memorandum to all heads of DOJ department components, as well as United States Attorneys, "to present a series of principles for drafting provisions pertaining to the use of monitors in connection with deferred prosecution and non-prosecution agreements … with corporations." Tokar Decl. ¶ 4, Ex. A (hereinafter "Morford Memorandum").

20. Among other guidance, the Morford Memorandum requires that the "corporation and the Government [] discuss the necessary qualification for a monitor based on the facts and circumstances of the case" and "avoid potential and actual conflicts of interest" in the selection of corporate compliance monitors. Tokar Decl. ¶ 7, Ex. A. The Morford Memorandum describes several mechanisms to achieve these goals of independence and conflict-of-interest avoidance, including the creation of a "standing or *ad hoc* committee in the Department" and a reminder to those involved in the selection process that they must comply with DOJ's conflict-of-interest regulations. *Id*. More specifically, the Morford Memorandum calls for the selection of monitors through the use of a candidate pool "of at least three qualified monitor candidates" whenever possible. *Id.*

21. On June 24, 2009, Assistant Attorney General Lanny Breuer of the DOJ Criminal Division distributed a memorandum implementing the principles of the Morford Memorandum. Tokar Decl. ¶ 8, Ex. C (hereinafter "Breuer Memorandum"). The Breuer Memorandum laid out the monitor selection process with respect to any settlements reached by the DOJ Criminal Division, including those involving violations of the FCPA. *Id.*

22. In his First FOIA Request, Plaintiff requested a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Tokar Decl. ¶ 10.

23.     On June 23, 2015, Plaintiff was contacted by Mr. Sprung via telephone to discuss the First FOIA Request.  During this phone call, Mr. Sprung speculated that, among others, FOIA Exemptions 5 and 6 would likely be asserted by DOJ as a basis for withholding documents responsive to the First FOIA Request.  Mr. Sprung also indicated that the collection and processing of documents responsive to Plaintiff's Firs FOIA Request would take a considerable amount of time.  Tokar Decl. ¶ 12.

24.     When Plaintiff spoke with Mr. Sprung on June 23, 2015, he was not represented by counsel.  Tokar Decl. ¶ 12.

25.     Plaintiff and his editor, Mary Jacoby, spoke with Mr. Sprung via telephone on August 11, 2015.  During this conference, Mr. Sprung reiterated that DOJ would likely assert Exemption 5 as a basis for withholding documents responsive to the First FOIA Request.  Tokar Decl. ¶ 13.

26.     During the August 11, 2015 conference, Mr. Sprung agreed with Ms. Jacoby, that Exemption 5 would likely not be asserted as a justification for withholding the names of the monitor candidates.  He also stated that Plaintiff may have a reasonable argument for obtaining the names of the law or consulting firms of the monitor candidates, but that he believed that privacy exemptions (in particular, Exemption 6) could be asserted as a justification for withholding the names of the individual monitor candidates.  Tokar Decl. ¶ 13.

27.     When Plaintiff and Ms. Jacoby spoke with Mr. Sprung on August 11, 2015, he was not represented by counsel.  Tokar Decl. ¶ 13.

28.     As a result of the two phone calls Plaintiff had with Mr. Sprung, Plaintiff was under the impression that DOJ would not release the records Plaintiff requested in his First FOIA Request, and believed he would not get materials responsive to the First FOIA Request without

narrowing its scope. Tokar Decl. ¶ 14.

29. On August 11, 2015, Ms. Jacoby sent an e-mail to Mr. Sprung, copying Plaintiff, which narrowed the First FOIA Request. In this e-mail, Ms. Jacoby wrote that "we argue that the identities of monitor candidates do not fall under FOIA Exemption 5 because that information is neither a government agency-generated record nor reflective of the department's deliberative process." Further, Ms. Jacoby wrote that "[i]n our phone call, [Mr. Sprung] suggested we may have a reasonable argument to obtain the names of the law or consulting firms of the monitor candidates submitted to the department by the corporations. At the same time, you suggested there may be a privacy exemption protecting release of the names of the individual attorneys or forensic accountants submitted as candidates to lead the monitorship team. We argue respectfully that the privacy exemption applies only to release of personal information, such as medical or personnel records, and not to the names of professionals or their firms under consideration for the award of a lucrative government-mandated business contract. We also asked for no trade or confidential business information. Whatever potential 'embarrassment' an attorney who was not selected to be a monitor may feel by disclosure under FOIA is outweighed by the strong public interest in knowing that companies are complying with the spirit of their negotiated criminal resolutions by submitting monitor candidates who are qualified and conflict-free." Tokar Decl. ¶ 15, Ex. F.

30. Defendant assigned the First FOIA Request, as narrowed, the tracking number CRM-300486157. Def. SMF ¶ 8.

31. On October 2, 2015, Ms. Jacoby spoke with Mr. Sprung about the status of Plaintiff's FOIA Request. During this call, Mr. Sprung reiterated that Exemptions 5 and 6 would

likely still be applied to withhold information responsive to the First FOIA Request, even as narrowed.  Tokar Decl. ¶ 17.

32.  A letter dated November 10, 2015 from Plaintiff to Ken Courter, Chief, FOIA/PA Unit, DOJ Criminal Division states that "[m]ore than 180 days have elapsed since [Plaintiff's] FOIA request was first submitted" and requests that "the division provide a formal response to [Plaintiff's] FOIA, in writing, so that [Plaintiff] may take the appropriate steps to respond to the issues that have been raised."  Tokar Decl. ¶ 17, Ex. G.

33.  The January 13, 2016 submitter notice sent to companies identified in Plaintiff's First FOIA Request notes that "[t]he requester subsequently agreed to narrow the scope of the request to cover, among other things, names and associated law or consulting firms of the three candidates submitted by your company as part of the negotiated resolution of the criminal case."  Tokar Decl. ¶ 19, Ex. H.

34.  On February 2, 2016, Benjamin Gruenstein, partner at Cravath, Swaine & Moore LLP and counsel for Avon Products, Inc., contacted Plaintiff by telephone.  During the call, Mr. Gruenstein agreed to voluntarily provide the name of Avon's FCPA monitor and firm affiliation, well as the two other candidates and their firm affiliations.  Tokar Decl. ¶ 20.

35.  A letter dated February 3, 2016 from Mr. Gruenstein to Mr. Sprung confirms this conversation; the letter states that "Avon is not asserting that this is confidential business information."  Tokar Decl. ¶ 21, Ex. I.

36.  By e-mail dated February 24, 2016 from Plaintiff to Mr. Sprung, Plaintiff wrote that "we narrowed the request to help ensure that it's both easy to produce and undeniably responsive."  Tokar Decl. ¶ 22, Ex. J.  Plaintiff also wrote that DOJ was "long past the statutory 20-day deadline (as well as the 10-day extension)."  *Id.*

37. In his Second FOIA Request, Plaintiff requested a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Tokar Decl. ¶ 25.

38. By letter dated April 18, 2016, the DOJ acknowledged receipt of the Second FOIA Request. Tokar Decl. ¶ 26, Ex. L.

39. By e-mail dated March 29, 2016 from Plaintiff to Amanda Marchand Jones, Acting Chief, FOIA/PA Unit, DOJ Criminal Division, Plaintiff inquired about the status of the First FOIA Request. In the e-mail, Plaintiff wrote that he "filed [his] initial request over 11 months ago … and [has] yet to receive any responsive information or even a formal reply from the FOIA unit." Plaintiff also wrote that "since January, Mr. Sprung has failed to reply to repeated inquiries as to the status of the request." Plaintiff also wrote that "Just Anti-Corruption's FOIA was narrowed to ensure that it's both easy to produce and undeniably responsive." Tokar Decl. ¶ 27, Ex. M.

40. By letter dated May 26, 2016, attorney Alison Schary of Davis Wright & Tremaine LLP sent a letter to the DOJ Criminal Division's FOIA unit on Plaintiff's behalf to inquire about the status of the First FOIA Request. Tokar Decl. ¶ 28, Ex. N.

41. Defendant did not provide Plaintiff with any records responsive to his two FOIA requests before this lawsuit was filed. Tokar Decl. ¶ 30.

42. Prior to the filing of this lawsuit, Plaintiff had not received a formal determination on the First FOIA Request or the Second FOIA Request. Tokar Decl. ¶ 30.

43. Prior to the filing of this lawsuit, Plaintiff had not received formal determinations on his requests for a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii), or his requests for fee waivers pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Tokar

Decl. ¶ 32.

44. Defendant did not provide the search parameters, including the search terms, used by DOJ to search for information contained in DOJ's table produced in response to Plaintiff's First FOIA Request. *See* Declaration of Peter C. Sprung, ECF No. 9-2, ("Sprung Decl.").

45. Defendant did not include the documents used to create the table produced in response to Plaintiff's First FOIA Request on Defendant's *Vaughn* Index. Sprung Decl.

46. On January 24, 2017, Plaintiff spoke with Mr. Sprung by telephone to inform him about several inaccuracies in the table produced in response to Plaintiff's First FOIA Request. Tokar Decl. ¶ 34–35.

47. In the Status Report and Proposed Schedule filed with the Court on March 14, 2017, DOJ informed the Court it had "since determined that the table that has been released requires certain corrections" and stated it would release a corrected table to Plaintiff within 30 days. ECF No. 7 at 2.

48. On April 14, 2017, Defendant provided Plaintiff with a revised table. Tokar Decl. ¶ 46.

49. On April 17, 2017, counsel for Plaintiff contacted DOJ counsel after Plaintiff identified factual inaccuracies in the corrected table. Tokar Decl. ¶ 39.

50. On July 10, 2017, DOJ produced a second "corrected" table. Tokar Decl. ¶ 40.

51. The second revised table produced on July 10, 2017 contained information responsive to the First FOIA Request, with the same identifying information withheld pursuant to Exemptions 6 and 7(C). Tokar Decl. ¶ 40.

52. The cover letter accompanying the second revised table states that "the table released on January 27, 2017, incorrectly identified F. Joseph Warin as the monitor for Innospec,

Inc. (Innospec). He was not the monitor and his name has been removed from the corrected table." Tokar Decl. ¶ 41.

53. DOJ withheld certain information from records produced in response to the Second FOIA Request, asserting Exemptions 4, 6 and 7(C). In particular, DOJ withheld, asserting Exemption 6, (1) the names of corporate compliance monitor candidates; (2) the names of private attorneys who responded to the notices on behalf of their clients, and (3) the name of one of the DOJ employees who received some of the responses. DOJ also withheld several paragraphs from one response, asserting Exemption 4. Sprung Decl. ¶ 30.

Dated: August 23, 2017

Respectfully submitted,

*/s/ Bruce D. Brown*
Bruce D. Brown
DC Bar No. 457317
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, D.C. 20005
Phone:  202.795.9300
Facsimile:  202.795.9310
E-mail: bbrown@rcfp.org

*Of Counsel for The Reporters Committee
for Freedom of the Press:*

Jennifer A. Nelson
DC Bar No. 1011387
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, D.C. 20005
Phone:  202.795.9300
Phone:  202.795.9300
Facsimile:  202.795.9310
E-mail: jnelson@rcfp.org