**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DYLAN TOKAR,

         Plaintiff,

   v.

UNITED STATES DEPARTMENT OF
JUSTICE,

        Defendant.

Civil Action No. 16-cv-2410 (RC)

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

    A.    Corporate Compliance Monitorships. ............................................................................ 3

    B.    Plaintiff's FOIA Requests. .............................................................................................. 5

    C.    Plaintiff's Lawsuit and Relevant Procedural Background ................................................ 7

LEGAL STANDARDS ............................................................................................................. 8

ARGUMENT ............................................................................................................................ 10

    I.    Defendant improperly redacted "not responsive" material from responsive records. ...... 10

        A.    An email chain is a "record" for purposes of FOIA. .................................................... 11

        B.    DOJ has, in fact, treated each email chain at issue as a single responsive record. ....... 15

    II.    Defendant has failed to meet its burden to justify its withholding of records in full or in part under FOIA Exemptions 6 and 7(C). .......................................................................... 16

        A.    DOJ does not and cannot show that information about corporate compliance monitor candidates and their respective professional representations would constitute an "unwarranted invasion of personal privacy." ............................................................. 19

        B.    DOJ does not and cannot show that disclosure of the names of DOJ employees who worked to select corporate monitors would constitute an "unwarranted invasion of personal privacy." ......................................................................................... 20

CONCLUSION .......................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Justice*, 655 F.3d 1 (D.C. Cir. 2011) ............................................................ 18

*Al-Fayed v. Cent. Intelligence Agency*, 254 F.3d 300 (D.C. Cir. 2001) ...................................... 11

*Am. Immigration Lawyers' Ass'n v. Exec. Office for Immigration Rev.*,
830 F.3d 667 (D.C. Cir. 2016) ........................................................................ 9, 10, 14, 15, 16

*Am. Oversight v. United States Dep't of Health and Human Services*,
2019 WL 1430429 (D.D.C. Mar. 30, 2019) ......................................................................... 12, 13

*Am. Oversight v. United States Gen. Servs. Admin.*, 311 F. Supp. 3d 327 (D.D.C. 2018) .......... 14

*Arieff v. Dep't of Navy*, 712 F.2d 1462, 1468 (D.C. Cir. 1983) ..................................................... 8

*Bigwood v. United States Agency for Int'l Dev.*, 484 F.Supp.2d 68 (D.D.C. 2007) ...................... 9

*Billington v. Dep't of Justice*, 233 F.3d 581 (D.C. Cir. 2000) ...................................................... 9

*Cable News Network v. Fed. Bureau of Investigation*, 298 F. Supp. 3d 124 (D.D.C. 2018) ....... 16

*Campbell v. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998) .................................................... 9, 17

*Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108 (D.C. Cir. 2015) .................................. 11

*Coffey v. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1 (D.D.C. 2017) .......................................... 13

*Common Cause v. Nuclear Regulatory Com'n*, 674 F.2d 921 (D.C. Cir. 1982) .......................... 21

*Davis v. Dep't of Justice*, 968 F.2d 1276 (D.C. Cir. 1992) ........................................................ 18

*Defenders of Wildlife v. United States Border Patrol*, 623 F.Supp.2d 83 (D.D.C. 2009) ............. 9

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ......................................................................... 8

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ................................................................ 9

*Dep't of State v. Ray*, 502 U.S. 164 (1991) ................................................................................. 8

*Families for Freedom v. United States Customs & Border Prot.*, No. 10-cv-2705,
2011 WL 4599592 (S.D.N.Y. Sept. 30, 2011) ...................................................................... 14

*Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615 (1982) ................................................ 9

*Fed. Labor Relations Auth. v. United States Dep't of Treasury*,
884 F.2d 1446 (D.C. Cir. 1989) .......................................................................................... 22

*Judge Rotenberng Educ. Ctr.*, 2019 WL 1296957 (D.D.C Mar. 21, 2019) ................................ 13

*Judicial Watch v. Food and Drug Admin.*, 449 F.3d 141 (D.C. Cir. 2006) ................................. 21

*Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004) .................................. 18

*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980) .......................... 12

*Kurzon v. Dep't of Health & Human Servs.*, 649 F.2d 65, 69 (1st Cir. 1981) ............................. 19

*Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) .......... 20

*Miller v. Dep't of Justice*, 562 F. Supp. 2d 82 (D.D.C. 2008) ................................................... 21

*Milner v. Dep't of the Navy*, 562 U.S. 562 (2011) ....................................................................... 9

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) .......................................................................... 9

*Multi Ag Media LLC v. USDA*, 515 F.3d 1224 (D.C. Cir. 2008) ......................................... 17, 18

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) ..................... 8, 17, 22

*Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873 (D.C. Cir. 1989) ............... 17, 18

*NLRB v. Robbins Tired & Rubber Co.*, 437 U.S. 214 (1978) ....................................................... 1

*Painting and Drywall Work Preservation Fund v. HUD*, 936 F.2d 1300 (D.C. Cir. 1991) ......... 22

*Parker v. Dep't of Justice Office of Prof. Resp.*,
278 F. Supp. 3d 446 (D.D.C. 2017) .............................................................................. 12, 13, 14

*Physicians Committee for Responsible Medicine v. Glickman*,
117 F. Supp. 2d 1 (D.D.C. 2000) ................................................................................... 19, 20

*Tokar v. Dep't of Justice*, 304 F. Supp. 3d 81 (D.D.C. 2018) .................................... 2, 3, 7, 8, 22

*Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990) ................................................. 9

*Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749 (1989) ................... 18

*Winston & Strawn, LLP v. McLean*, 843 F.3d 503 (D.C. Cir. 2016) .............................................. 3

**Statutes**

5 U.S.C. § 552 .............................................................................................................. 1, 6, 8, 9, 17

**Legislative Materials**

H.R. Rep. No. 94-880 ............................................................................................................. 21

S. Rep. No. 104-272, 27 (1996) ............................................................................................. 12

S. Rep. No. 94-354 .................................................................................................................. 21

**Other Authorities**

*Deferred Prosecution:  Should Corporate Settlement Agreements be Without Guidelines:*
    *Hearing Before the Subcomm. On Commercial & Admin. Law of the H. Comm. On the*
    *Judiciary*, 110th Cong. 312 (2008) .......................................................................................... 4

Memorandum from Craig S. Morford, Acting Deputy Att'y Gen., for Heads of Dep't
    Components and U.S. Att'ys (Mar. 7, 2008) ......................................................................... 4

OIP Guidance: Defining a "Record" Under the FOIA, Dept. of Justice (updated Feb. 15, 2017),
    *available at* https://www.justice/gov/oip/oip-guidance/defining_a_record_under_the_foia ... 11

Veronica Root, *The Monitor-"Client" Relationship*, 100 VA L. Rev. 523 (2014) ....................... 3

Pursuant to Fed. R. Civ. P. 56 and Local Rules 7(a), 7(b), 7(h), & 56.1, Plaintiff Dylan

Tokar ("Plaintiff"), by and through his undersigned counsel, hereby submits this Memorandum

of Law in Opposition to the Motion for Summary Judgment filed by Defendant U.S. Department

of Justice ("DOJ" or "Defendant") and in support of Plaintiff's Cross-Motion for Summary

Judgment.  For the reasons set forth herein, this Court should deny Defendant's Motion for

Summary Judgment ("Defendant's MSJ") and enter summary judgment in Plaintiff's favor.

## INTRODUCTION

This case concerns two requests submitted to DOJ by Dylan Tokar, a journalist formerly

with the trade publication *Just Anti-Corruption*, under the Freedom of Information Act, 5 U.S.C.

§ 552 ("FOIA" or the "Act").  Plaintiff's first FOIA request sought records related to the

corporate compliance monitor selection process for 15 companies that settled criminal charges

brought by DOJ under the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-1, *et seq.* ("FCPA")

(the "First FOIA Request").  *See* Declaration of Dylan Tokar (hereinafter "Tokar Decl.") ¶ 7, Ex.

C.  Plaintiff's second FOIA request sought the disclosure of letters drafted by these 15

companies objecting to the release of information in response to the First FOIA Request (the

"Second FOIA Request").[1]  Tokar Decl. ¶ 12, Ex. F. Consistent with "[t]he basic purpose of

FOIA [] to ensure an informed citizenry, vital to the functioning of a democratic society . . . and

to hold governors accountable to the governed," *NLRB v. Robbins Tired & Rubber Co.*, 437 U.S.

214, 242 (1978), Plaintiff sought these records in connection with his reporting, in order to

---

[1] Following an order from this Court, on June 14, 2018, DOJ produced unredacted versions of
the records responsive to Plaintiff's Second FOIA Request.  *See* Plaintiff's Statement of Material
Facts (hereinafter "Pls. SMF") ¶ 25.  Plaintiff has no remaining challenges to the records
produced in response to the Second FOIA Request; as a result, this Motion for Summary
Judgment addresses only DOJ's withholdings of records and portions thereof made pursuant to
Plaintiff's First FOIA Request.

inform the public about DOJ's enforcement of the FCPA.

Plaintiff previously challenged DOJ's response to these FOIA requests.  In 2017, the parties cross-moved for summary judgment as to the propriety of Defendant's reliance on FOIA Exemptions 4, 6, and 7(C) to withhold responsive information from Plaintiff.  *See* Pls. SMF ¶ 24. Specifically, Plaintiff challenged the redaction of key information, including the names of monitor candidates, from a chart created by DOJ in response to Plaintiff's First FOIA Request, as narrowed during discussions with DOJ.  *Id*.  Plaintiff also sought the agency records responsive to that First FOIA Request, as narrowed.  *Id*.  On March 29, 2018, this Court held that "DOJ's redactions pursuant to Exemptions 6 and 7(C) were impermissible," and further held that DOJ improperly interpreted Plaintiff's First FOIA Request by producing a chart, rather than the requested records.  *See Tokar v. Dep't of Justice*, 304 F. Supp. 3d. 81, 90, 92 (D.D.C. 2018).  As a result, this Court ordered DOJ to search for and release to Plaintiff documents responsive to Plaintiff's First FOIA Request, as narrowed.  *Id.* at 92.  Defendants produced responsive records to Plaintiff on a rolling basis between June 14, 2018 and November 9, 2018.  Pls. SMF ¶ 25.

Defendant again moves for summary judgment, asserting that the Declarations of Peter C. Sprung, ECF No. 30-2, and Amanda Marchand Jones, ECF No. 30-3 ("Jones Declaration" or "Jones Decl."), establish both that DOJ conducted a sufficient search to locate records responsive to Plaintiff's FOIA Requests and that DOJ's withholding of information responsive to those requests is proper.  These declarations, however, cannot support summary judgment in Defendant's favor.  Specifically, DOJ continues to improperly rely upon Exemptions 6 and 7(C) to withhold responsive, non-exempt information, despite clear guidance provided by this Court in its earlier Opinion.  Further, DOJ improperly redacted certain material from records it deemed responsive to Plaintiff's FOIA Requests, claiming that the information contained within those

2

responsive records is "not responsive[.]"  Pls. SMF ¶ 26.

        As set forth herein, Plaintiff does not challenge the sufficiency of DOJ's search for

records responsive to Plaintiff's FOIA Requests.  Plaintiff also does not challenge DOJ's

assertion of Exemptions 4 and 5 to withhold certain portions of responsive records.[2]  However,

Plaintiff respectfully asserts that Defendant's MSJ should be denied as to certain withholdings

under Exemptions 6 and 7(C), as well as its withholding of "not responsive" material from

responsive records.  Summary judgment as to those issues should be entered in favor of Plaintiff.

## BACKGROUND

### A.      Corporate Compliance Monitorships.

        Plaintiff's prior briefing to this Court describes in detail corporate compliance

monitorships entered into under the Foreign Corrupt Practices Act ("FCPA") in, *see* ECF No. 10-

1 at 4–6.  Accordingly, Plaintiff provides only a brief overview here.  After the government

investigates a purported violation of the FCPA, the government and corporation may, in lieu of

prosecution, enter into a Deferred Prosecution Agreement ("DPA") that obligates the corporation

to retain a compliance monitor to ensure compliance with the DPA and FCPA.  These monitors

are selected by the corporation themselves from a pool of candidates approved by DOJ.

Veronica Root, *The Monitor-"Client" Relationship*, 100 VA L. Rev. 523, 531–32 (2014).

        These monitorships can last years and are often financially lucrative to the monitors and

the firms that employ them.  Steven Davidoff Solomon, *In Corporate Monitor, a Well-Paying

Job but Unknown Results*, N.Y. Times, Apr. 15, 2014, *available at* https://perma.cc/H8YF-

---

[2] Plaintiff recognizes that, although Plaintiff does not challenge these withholdings, the Court
"has an independent duty to 'determine for itself whether the record and any undisputed material
facts justify granting summary judgment,' because a Court may not grant summary judgment
simply because the withholding was not challenged." *Tokar*, 304 F. Supp. at 94 n.3 (quoting
*Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (additional citations
omitted)).

CAYK.[3]  As such, the selection process for these monitorships has invited scrutiny; in 2008,

DOJ conducted an internal inquiry into its procedures for selecting corporate compliance

monitors after then-U.S. Attorney Chris Christie approved a contract reportedly worth $28

million to $52 million for his former boss, and former U.S. Attorney General, John Ashcroft to

serve as the compliance monitor for medical device company Zimmer Holdings.  *See* Philip

Shenon, *Ashcroft Deal Brings Scrutiny in Justice Dept.*, N.Y. Times, Jan. 10, 2008, *available at*

https://perma.cc/9M75-TCP3.  Following this inquiry, DOJ in 2008 released the Morford

Memorandum, which formally established guidelines for monitor selections.  *See* Memorandum

from Craig S. Morford, Acting Deputy Att'y Gen., for Heads of Dep't Components and U.S.

Att'ys (Mar. 7, 2008), *available at* https://perma.cc/DNV7-ESKT.

Though the Morford Memorandum laid out several principles designed to safeguard the

monitor selection process, concerns remain as to whether DOJ officials and corporations have

been provided too much discretion in the selection process.  *See, e.g., Deferred Prosecution:*

*Should Corporate Settlement Agreements be Without Guidelines:  Hearing Before the Subcomm.*

*On Commercial & Admin. Law of the H. Comm. On the Judiciary*, 110th Cong. 312 (2008)

(statement of Rep. William Delahunt stating that ethical concerns arise "when you have a

potential wrongdoer, which is the corporate entity, requesting or signing off on who is going to

monitor compliance with the agreement").  And in October 2018, Assistant Attorney General

Brian Benczkowski published a new memorandum "to further refine the factors that go into the

determination of whether a monitor is needed, as well as [to] clarify and refine the monitor

---

[3] True and correct copies of the news articles and other publicly available material referred to
herein that demonstrate the widespread attention that the FCPA corporate compliance monitor
selection process receives are linked herein or attached as exhibits to the Tokar Declaration.
Plaintiff respectfully requests that the Court take judicial notice of these materials pursuant to
Fed. R. Civ. P. 201.

4

selection process" for matters handled by DOJ's Criminal Division.  Assistant Attorney General

Brian A. Benczkowski, Dep't of Justice, Remarks at NYU School of Law (Oct. 12, 2018),

*available at* https://perma.cc/4KW9-EX4K; *see also* Memorandum from Brian A. Benczkowski,

Asst. Att'y Gen., to All Criminal Division Personnel (Oct. 11, 2018), *available at*

https://perma.cc/3DA6-NRVK.  Among other things, the memorandum "appear[ed] to raise the

internal hurdles that prosecutors must clear before seeking a monitorship condition when

resolving the investigation or prosecution of a corporation."  Harry Sandick, Ryan J. Kurtz,

*Insight: DOJ Announces Changes in Corporate Monitorship Policy*, Bloomberg Law, Oct. 31,

2018, *available at:* http://perma.cc/M8QJ-YQ8E.  In public comments, Benczkowski indicated

that the memorandum sought to ensure public confidence in the monitor selection process,

avoiding conflicts of interest and "any suggestion that monitors are chosen for inappropriate

reasons, including personal relationships or past employment at the Department [of Justice]."  *Id.*

### B.     Plaintiff's FOIA Requests.

Mr. Tokar was a reporter for *Just Anti-Corruption* at the time he submitted the FOIA

requests at issue.  *Just Anti-Corruption* is a trade publication for lawyers that covers DOJ and its

investigations into violations of the FCPA.  In connection with his reporting on the process of

corporate compliance monitor selection, Plaintiff sought records from DOJ that would shed light

on that practice, including whether DOJ was abiding by the principles for monitor selection set

forth in the Morford Memorandum.

On April 24, 2015, Plaintiff submitted his first FOIA Request (the "First FOIA Request")

to DOJ's Criminal Division.  Tokar Decl. ¶ 7, Ex. C.  The First FOIA Request sought:

> (1) All documents submitted by counsel for the companies at the outset of each monitor
>
> selection process, including the names of up to three qualified monitor candidates

whom the companies are allowed to recommend.  The information should identify
which candidate, if any, the company specified as its first choice as monitor.

(2) All Monitor Selection Memoranda, including any files, documents, and attachments
therein, submitted for review to the Standing Committee on the Selection of
Monitors, and information about which monitors were approved or disapproved and
the reasons therefore, including the recommendations submitted by the committee,
the Assistant Attorney General for the Criminal Division, and the Office of the
Deputy Attorney General.

(3) Records of the Standing Committee, including its membership, attendance records,
appointments of temporary designees, voting records and recusals in connection with
the consideration of monitor candidates for each of the [15] companies listed [herein].

*Id*.

Plaintiff's First FOIA Request requested a fee benefit as a representative of the news
media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. §
552(a)(4)(A)(iii).  Pls. SMF ¶ 19.

As required by Executive Order 12,600 and DOJ's FOIA regulations, 28 C.F.R § 16.8,
DOJ notified the companies affected by Plaintiff's First FOIA Request to provide the companies
an opportunity to object to disclosure prior to disclosing records to Plaintiff.  Tokar Decl. ¶ 11.
On April 12, 2016, Plaintiff submitted the Second FOIA Request seeking disclosure of any
objection letters received from corporations in response to these corporate submitter
notifications.  Tokar Decl. ¶ 12, Ex. F.  Plaintiff's Second FOIA Request included a request for a
fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a
fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  Tokar Decl. ¶ 13.

After numerous meet and confer discussions with DOJ counsel Peter Sprung, and in an effort to receive responsive material after a significant delay, Plaintiff on August 11, 2015 offered to narrow his First FOIA Request to the following:

(1) the names of up to three monitor candidates and their associated law or consulting firms submitted to the DOJ by the defendant corporations under the terms of their negotiated resolutions; and

(2) the names and titles of members of the Criminal Division's Standing Committee on the Selection of Monitors for the period of January 1, 2009 to the present.

Tokar. Decl. ¶ 10, Ex. E.

Prior to the filing of this lawsuit, Plaintiff had not received a written determination as to either the First FOIA Request or the Second FOIA Request nor had DOJ issued a determination as to his requests for a fee waiver or for a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).  Tokar Decl. ¶14–15; Pls. SMF ¶ 22–23.  No records were produced to Plaintiff prior to the filing of this lawsuit. Tokar Decl. ¶15; Pls. SMF ¶ 21.

## C.    Plaintiff's Lawsuit and Relevant Procedural Background.

Plaintiff filed his Complaint on December 9, 2016.  ECF No. 1.  Defendant filed its Answer on February 28, 2017.  ECF No. 9.  The parties cross-moved for summary judgment in 2017; Plaintiff moved for summary judgment as to, *inter alia*, DOJ's improper redactions pursuant to Exemptions 6 and 7(C) to a chart it created and released in response to Plaintiff's First FOIA Request, as well as DOJ's refusal to produce the underlying records responsive to that request.  *See Tokar*, 304 F. Supp. 3d at 86, 92.  On March 29, 2018, this Court issued an Opinion granting in part and denying in part Defendant's motion for summary judgment and

granting Plaintiff's motion for summary judgment.  *Id*.  The Court found that DOJ was "required

to search for and release" two categories of records:  (1) "records submitted by the fifteen

companies' attorneys that reflect '[t]he names of [] up to three monitor candidates and their

associated law or consulting firms submitted to the [d]epartment by the defendant corporation

under the terms of their negotiated resolutions,'" and (2) "standing committee records that reflect

'[t]he names and titles of members of the Criminal Division's Standing Committee on the

Selection of Monitors for the period Jan. 1, 2009 up through the present date,' as well as those

members' 'dates of service . . . [and] the names of any temporary designees appointed to the

committee and the dates of their service.'"  *Id*. at 92.

Thereafter, DOJ conducted a search for responsive records and made six productions of

responsive records to Plaintiff.  Pls. SMF ¶ 25.  DOJ withheld certain information from these

responsive records asserting Exemptions 4, 5, 6 and 7(C).  Pls. SMF ¶ 26.  DOJ also withheld

certain information from responsive records asserting that the redacted information was "not

responsive" to Plaintiff's FOIA Requests.  *Id*.

## LEGAL STANDARDS

FOIA was enacted to create an enforceable right of "access to official information long

shielded unnecessarily from public view."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)

(citation omitted).  The "core purpose of [] FOIA" is to ensure public access to "information

material for monitoring the Government's activities[.]"  *Arieff v. Dep't of Navy*, 712 F.2d 1462,

1469 (D.C. Cir. 1983) (citation and internal quotation marks omitted).  Courts must thus "bear in

mind," "[a]t all times," "that FOIA mandates a 'strong presumption in favor of disclosure.'"

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *Dep't of State

v. Ray*, 502 U.S. 164, 173 (1991)).

FOIA requires that agency records be made "promptly available" upon request unless

they fall within one of the Act's nine enumerated exemptions.  5 U.S.C. § 552(a)(3), (b).

"Consistent with the Act's goal of broad disclosure, these exemptions have been consistently

given a narrow compass." *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989); *Fed.*

*Bureau of Investigation v. Abramson*, 456 U.S. 615, 630 (1982) ("FOIA exemptions are to be

narrowly construed[.]").  FOIA "'impose[s] a substantial burden on an agency seeking to avoid

disclosure'" on the basis of an exemption.  *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007)

(citations omitted); *see also Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) at 30

("an agency bears the burden to justify exemptions under FOIA"); 5 U.S.C. § 552(a)(4)(B)

("[T]he burden is on the agency to sustain its action.").  An agency's showing is insufficient if it

"merely recit[es] statutory standards" or is "too vague or sweeping."  *Billington v. Dep't of*

*Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000) (quoting *Campbell*, 164 F.3d at 30).  In addition,

FOIA mandates that any "reasonably segregable portion of a record" be released even if other

parts are exempt from disclosure.  5 U.S.C. 552(b).  The nine FOIA exemptions are "explicitly

made exclusive," *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (citations omitted).

Thus, as the D.C. Circuit has held, there is "no statutory basis for redacting ostensibly non-

responsive information from a record deemed responsive."  *Am. Immigration Lawyers' Ass'n v.*

*Exec. Office for Immigration Rev.*, 830 F.3d 667, 670 (D.C. Cir. 2016) ("*AILA*").

     FOIA cases are frequently decided on motions for summary judgment.  *See Defenders of*

*Wildlife v. United States Border Patrol*, 623 F.Supp.2d 83, 87 (D.D.C. 2009); *Bigwood v. United*

*States Agency for Int'l Dev.*, 484 F.Supp.2d 68, 73 (D.D.C. 2007).  Summary judgment is proper

where "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the record fails to establish

that the agency's withholdings are justified, "summary judgment for the agency is not proper."

*Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The agency's actions are reviewed by the district court de novo.  5 U.S.C. § 552(a)(4)(B).

## ARGUMENT

**I.     Defendant improperly redacted "not responsive" material from responsive records.**

The D.C. Circuit has made clear that FOIA does not permit the redaction of portions of responsive records based on an agency's determination that such material is "non-responsive." *AILA*, 830 F.3d at 677.  Despite this binding precedent, three of the records produced by Defendant contain redactions made on the grounds that the redacted material is "not responsive" to Plaintiff's FOIA Requests.  Pls. SMF ¶ 26; *see also* Tokar Decl. ¶ 20–22, Exs. H–J.  Though Defendant fails to address these withholdings in its Motion for Summary Judgment, the Jones Declaration submitted in support thereof states that "[t]he Criminal Division [of DOJ] considers each email to be a distinct record for purposes of the FOIA; therefore, when making responsiveness determinations, each email in a string of emails and each attachment to an email are considered a separate record and processed accordingly."  Jones Decl. ¶ 19.

DOJ's position is untenable for at least two reasons.  *First*, an email chain is a single "record" for purposes of FOIA.  *Second*, even if DOJ could permissibly "consider" individual emails within an email chain to be separate "records" under the Act—which it cannot—the record is clear that, as a factual matter, it did not do so here.  DOJ processed and released each email chain at issue as a single responsive record; it does not even describe them as separate records in its *Vaughn* Index.  DOJ cannot now claim that it "consider[ed]" each individual email in those responsive email chains to be a "separate" record solely to avoid summary judgment against it.  In sum, the "sole basis on which [Defendants] may withhold particular information within [these responsive] record[s] is if the information falls within one of the statutory exemptions from FOIA's disclosure mandate."  *AILA*, 830 F.3d at 670.

### A.      An email chain is a "record" for purposes of FOIA.

As detailed above, DOJ has taken the position that it may parse individual emails within an email chain and treat them as separate "records" for purposes of determining responsiveness to Plaintiff's FOIA Request. Jones Decl. ¶ 19. This is incorrect. Defendant's cleaving of email chains into multiple "records" contravenes clear guidance from the D.C. Circuit and this Court regarding how to identify a relevant "record" for purposes of FOIA. Pursuant to that caselaw, an email chain, which reflects an email that includes prior email exchanges as in-line text, is properly viewed as a single "record." The division of each email chain into multiple "records" as a pretext for withholding portions of the email chains as "not responsive" is thus improper.

As an initial matter, courts "owe no particular deference to an agency's interpretation of FOIA." *Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1115 (D.C. Cir. 2015) (citation omitted). An agency's interpretation and application of terms within the Act—such as "record"—during administrative adjudications of FOIA requests is reviewed by courts de novo. *Id.*; *see also Al-Fayed v. Cent. Intelligence Agency*, 254 F.3d 300, 307 (D.C. Cir. 2001) (noting that it "is precisely because FOIA's terms apply government-wide that [courts] generally decline to accord deference to agency interpretations of [FOIA]"). That DOJ's Criminal Division purportedly "considers each email [within an email chain] to be a distinct record for purposes of the FOIA," Jones Decl. ¶ 19, should be accorded no deference. DOJ's self-serving interpretation of what constitutes a "record" is both illogical and inconsistent with precedent within this Circuit.[4]

---

[4] Plaintiff is aware of DOJ guidance which purportedly permits the definition of a "record" to include "an entire string of emails, a single email within a string of emails, or a paragraph within a single email" depending on the "topic of the request." *See* OIP Guidance: Defining a "Record" Under the FOIA, Dept. of Justice (updated Feb. 15, 2017), *available at* https://www.justice.gov/oip/oip-guidance/defining_a_record_under_the_foia. Because this guidance directly contradicts caselaw within this Circuit it is entitled to no deference.

An agency must process and disclose records responsive to a request in the "form or
format in which [it] maintains those records."  S. Rep. No. 104-272, 27 (1996).  This is because
FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide
access to those which it in fact has created and retained." *Kissinger v. Reporters Comm. for
Freedom of the Press*, 445 U.S. 136, 152 (1980).  Where, as here, an agency maintains a
document—such as an email chain—as a unit, the agency may not divide that unit into multiple
so-called "records" to withhold information requested under FOIA. *Am. Oversight v. United
States Dep't. of Health and Human Services*, --- F. Supp. 3d ---, 2019 WL 1430429, at *3
(D.D.C. Mar. 30, 2019) ("*American Oversight*"); *see also Parker v. Dep't of Justice Office of
Prof. Resp.*, 278 F. Supp. 3d 446, 451–52 (D.D.C. 2017) (Agency may not withhold attachment
to letter as "non-responsive").

Judge Amy Berman Jackson recently considered this very issue in *American Oversight*.
2019 WL 1430429, at *3.  There, the agency "redacted large portions of the agencies' email
chains based on their definition of what would constitute a 'record.'" *Id.* (noting that "[r]ather
than treating entire email chains as a 'record,' [the agency] took a narrower approach and defined
a 'record' to be each individual email in the chain[.]").  Noting that "it is commonly understood
that an email chain operates as a single record," Judge Jackson held this approach was "unduly
literal and stingy," and not "consistent with the day-to-day reality of electronic communication
as well as the general legal principles to be applied in FOIA cases." *Id.*  The court further noted
that the content of prior emails within the chain are often referenced or discussed in subsequent
emails, providing essential context necessary to understand the conversation and thus "form[ing]
a unified exchange." *Id.*  Therefore, the court held that plaintiff's FOIA request "cover[ed] the

redacted information [within an email chain] so long as it was included as in-line text in the

agencies' sent emails, regardless of whether the agency authored each email in the chain." *Id.*

As in *American Oversight*, it is clear that the three email chains at issue here were each

maintained as a single record.  Tokar Decl. ¶ 20, Ex. J at  9–10, 17–18.  In other words, each of

the three records at issue reflects a single email that contains, within that email, the contextual

conversational history of the email chain provided as in-line text (*i.e.*, prior "replies").  *Id.*

Without the context provide by the preceding email message or messages, the responding email

lacks all meaning.  *See, e.g.*, Tokar Decl. ¶ 20, Ex. J at 18 (Responsive, unredacted email stating

"Yes, that is correct" in reply to an email DOJ has fully redacted as "Not Responsive").

For this reason, permitting agencies to divide email chains into multiple "records" would

contravene caselaw in this Circuit holding that agencies should not impair the internal coherence

of a document.  *Parker*, 278 F. Supp. at 451–52 (holding that "a single record cannot be split into

responsive and non-responsive bits"); *see also Judge Rotenberng Educ. Ctr.*, --- F. Supp. 3d. ---

2019 WL 1296957, at *8 (D.D.C Mar. 21, 2019) ("Generally, agencies should not define records

'on less than a page-by-page basis'" (quoting Dept. of Justice, OIP Guidance: Determining the

Scope of a FOIA Request, FOIA Update, Vol. XVI, No. 3 (updated Aug. 13, 2014))).  And this

reasoning is in line with analogous cases that have analyzed whether an agency may properly

withhold documents attached to letters or emails as separate, "not responsive" records.  Courts

have consistently recognized that attachments to records that are discussed or referenced within

the record itself cannot be parsed as separate "not responsive" records because the attachment is

necessary context to understand the record it is attached to.  *See, e.g., Coffey v. Bureau of Land

Mgmt.*, 277 F. Supp. 3d 1, 8 (D.D.C. 2017) (request for "all emails" necessarily included

attachments to those emails referenced in the responsive emails because the emails made

"explicit reference to, or include[d] discussion of, the missing attachments," and thus those attachments "should reasonably be considered part and parcel of the email by which they were sent"); *Am. Oversight v. United States Gen. Servs. Admin.*, 311 F. Supp. 3d 327, 340 (D.D.C. 2018) (agency's exclusion of email attachment from production inappropriate where emails produced to plaintiff "refer to attachments" and therefore clearly "belong together" with the already-produced emails (citations omitted)); *Parker*, 278 F. Supp. at 451–52 (appropriate to treat letter and its attachment as "one indivisible whole" because the letter "itself touche[d] on the subject matter of the attachment and refer[red] the recipient to examine its contents"); *see also Families for Freedom v. United States Customs & Border Prot.*, No. 10-cv-2705, 2011 WL 4599592, at *5 (S.D.N.Y. Sept. 30, 2011) (rejecting agency's separation of emails and their attachments because "[t]he attachments can only be fully understood and evaluated when read in the context of the emails to which they are attached.  That is the way they were sent and the way they were received.  It is also the way in which they should be produced").  In this case, the email chain is "one indivisible whole," *Parker*, 278 F. Supp. at 451–52, because the record "can only be fully understood and evaluated when read in the context" of the entire chain.  *Families for Freedom*, 2011 WL 4599592, at *5.

Finally, though DOJ guidance purports to permit agencies to divide "documents that cover multiple, unrelated topics" into discrete "records,"  *AILA*, 830 F.3d at 678, the documents produced by DOJ here do not cover such "multiple, unrelated topics."  So far as Plaintiff can tell from Defendant's representations in its *Vaughn* Index, the content of the emails within each email chain all relate to a single subject: the proposed compliance monitor candidates.  *See, e.g.*, ECF 30-3 at 58 (Document Number 34 described as "[e]mails exchanging the resumes/CVs and other information about the proposed monitor candidates" and Document 35 described as

"[e]mails indicating the submission of Monitor Candidates").  The subject line of each email

chain, as well, reflects this understanding, and clearly indicates that the email chains at issue are

responsive to Plaintiff's First FOIA Request.  Tokar Decl. ¶ 20, Ex. J at  9–10, 17–18 (subject

lines reading "RE: BAE Systems plc – monitor candidates"; "Proposed Letter to Probation"; and

"Re: In re Medical Devices – Biomet Monitor Candidates Submission").[5]  Each email chain is a

unit that reflects a responsive record; as a result, DOJ may only redact information from these

records pursuant to one of the Act's nine enumerated exemptions.  *AILA*, 830 F.3d at 678.

> **B.**     **DOJ has, in fact, treated each email chain at issue as a single responsive
> record.**

As explained above, it is impermissible for an agency to treat individual emails within an

email chain as separate "records" for purposes of withholding "non-responsive" portions of a

responsive email chain.  *See AILA*, 830 F.3d at 677.  Yet even if FOIA permitted an agency to

treat individual emails within an email chain as separate records, that is not what DOJ has done

here.  And DOJ may not now define a "record" in such a way as to withhold individual emails

within an email chain as "non-responsive" when DOJ has otherwise treated that email chain as

single record responsive to Plaintiff's FOIA request.  *Id.*

DOJ's *Vaughn* Index is instructive.  DOJ describes its *Vaughn* Index as "containing

detailed descriptions of partially withheld records and records withheld in full[,]"; it provides

"information for each document," including title, author, and brief description of the document.

Jones Decl. ¶ 24.  DOJ's *Vaughn* Index does not treat individual emails within an email chain as

---

[5] Indeed, even *if* DOJ *could* permissibly divide emails within a single chain into responsive and
not-responsive records, it appears that the emails DOJ withheld as "not responsive" are *actually
responsive to Plaintiff's FOIA request. See, e.g.*, Tokar Decl. ¶ 20, Ex. J at 18 (Responsive,
unredacted email stating "Yes, that is correct" in reply to an email DOJ has fully redacted as
"Not Responsive").

separate "records."  Instead, it groups related email chains together and describes each as a single "document[.]". *See, e.g.*, ECF 30-3 at 57 (Document Number 32 on Defendant's *Vaughn* Index reflecting two email chains containing emails deemed responsive, dated July 12, 2010 and July 22, 2010, as a single record).  In other words, DOJ did not cleave each email chain into individual emails and describe each individual email as a separate record for purposes of providing a description of information withheld and the justification for those withholdings. Having treated the email chains at issue as single, responsive records, DOJ cannot now reverse course in an effort to justify withholding portions of those records.  "[O]nce an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record—*i.e.*, as a unit—except insofar as the agency may redact information falling within a statutory exemption." *AILA*, 830 F.3d at 677; *see also Cable News Network v. Fed. Bureau of Investigation*, 298 F. Supp. 3d 124, 130–31 (D.D.C. 2018) (even where "one responsive [email] includes two separate conversational threads," one of which is not responsive to plaintiff's request, "the Bureau must nonetheless produce it" because it has identified the "document or collection of material … as a responsive 'record'" and "the information's non-responsiveness is now irrelevant" (quoting *AILA*, 830 F.3d at 677)).

Because DOJ improperly redacted portions of responsive records as "non-responsive," Plaintiff respectfully requests that the Court direct Defendant to reproduce the responsive records without those improper redactions.

## II.    Defendant has failed to meet its burden to justify its withholding of records in full or in part under FOIA Exemptions 6 and 7(C).

Plaintiff challenges DOJ's assertion of Exemptions 6 and 7(C) as justification for withholding two primary categories of information:  (1) information about corporate compliance monitor candidates, including information related to their professional client representations; and

(2) the names of DOJ employees involved in the selection of corporate compliance monitors.[6] These withholdings are impermissible.

Exemption 6 applies to "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement" to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

In the context of Exemption 6, the D.C. Circuit has made clear that there is a "presumption in favor of disclosure [that] is as strong as can be found anywhere in the Act." *Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation and internal quotation marks omitted). As to personal information in particular, given the "presumption of openness inherent in FOIA," *Campbell*, 164 F.3d at 33, Exemption 6 permits withholding *only* if "disclosure would compromise a substantial, as opposed to a *de minimus*, privacy interest." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). In determining what constitutes a "substantial" privacy interest, the Court must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *Norton*, 309 F.3d at 31, 32 (citation and internal quotation marks omitted). If disclosure would implicate a substantial privacy interest, the court "must weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of

---

[6] Plaintiff does not challenge DOJ's use of Exemptions 6 and 7(C) to withhold the non-public signatures of DOJ employees. Plaintiff also does not challenge instances in which DOJ redacted private details about corporate monitor candidates unrelated to their professional work (*i.e.*, "birthdates" and "hobbies"). Def. Mot. at 18.

personal privacy." *Horner*, 879 F.2d at 874.  Similarly, under Exemption 7(C), "a court must

balance the public interest in disclosure against the interest Congress intended the Exemption to

protect." *Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 776 (1989).[7]

Under Exemptions 6 and 7(C), a court first determines if there is a substantial privacy

interest in the information to be disclosed.  *See ACLU v. Dep't of Justice*, 655 F.2d 1, 6–7 (D.C.

Cir. 2011).  If the court finds such a privacy interest, the next step is to balance that interest

against the public interest, "focus[ing] on 'the citizens' right to be informed about what their

government is up to.'"  *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting

*Reporters Comm.*, 489 U.S. at 773).

Defendant's utilization of Exemption 6 and/or 7(C) to shield from disclosure (1)

professional resume information of corporate compliance monitor candidates; and (2) names of

DOJ attorneys involved in FCPA litigation and/or the selection of corporate compliance

monitors, is improper.  Defendant fails to show that these individuals have *any* privacy interest,

let alone a substantial one, that would work to outweigh the significant public interest in this

information.  Where, as here, "'no significant privacy interest is implicated . . . FOIA demands

disclosure.'" *Multi Ag Media LLC*, 515 F.3d at 1229 (quoting *Horner*, 879 F.2d at 874).

---

[7] The language of the balancing test applicable under Exemption 6 differs from that for
Exemption 7(C) in that the latter omits the word "clearly" from the required showing, Plaintiff
nevertheless addresses both exemptions together because DOJ asserts the two exemptions in
tandem in its brief, Def. Mot. at 16–20, and because the D.C. Circuit "has deemed the privacy
inquiry of Exemptions 6 and 7(C) to be essentially the same." *Judicial Watch, Inc. v. Dep't of
Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).

A.    **DOJ does not and cannot show that information about corporate compliance monitor candidates and their respective professional representations would constitute an "unwarranted invasion of personal privacy."**

Defendant withheld purportedly "non-public information about the monitor candidates' clients" pursuant to Exemptions 6 and 7(C).  Def. Mot. at 18.  Defendant provides no caselaw to support these withholdings.  And Defendant's *Vaughn* Index recites only the conclusory, boilerplate assertion that the release of such information would "constitute an unwarranted invasion of personal privacy."  *See, e.g.*, ECF 30-3 at 57.  Defendant has not met its burden to justify these withholdings under FOIA.

Courts have held that the Act does not automatically shield the disclosure of information such as employment history, activities, and qualifications contained in the CVs or applications for government jobs or funds.  *See, e.g., Physicians Committee for Responsible Medicine v. Glickman*, 117 F. Supp. 2d 1 (D.D.C. 2000) ("*Physicians Committee*"); *Kurzon v. Dep't of Health & Human Servs.*, 649 F.2d 65, 69 (1st Cir. 1981).  While "CVs would presumably be redacted to protect personal data such as home addresses, telephone numbers, email addresses, and social security numbers … [o]ther information in a CV is ordinarily written down precisely so that it *will* be displayed."  *Physicians Committee*, 117 F. Supp. 2d at 6 (emphasis in original).  As such, the court in *Physicians Committee* determined that individuals nominated for a government advisory committee did not have a privacy interest in the release of their employment background.  *Physicians Committee*, 117 F. Supp. at 6.

Similarly, the information redacted by Defendant is contained in the professional CVs of distinguished attorneys who have built their careers on advising corporations in high-profile FCPA and other government investigations.  Indeed, Defendant has withheld information contained in the CVs of corporate compliance monitor candidates that, in several instances, appear to be screenshots of public-facing websites.  *See, e.g.*, Tokar Decl. ¶ 20, Ex. J at 14–16

(website biography titled "Our People: Consultant, Neil Fagan").  Defendants offer no reason as to why information contained in candidates' CVs should be subject to Exemptions 6 and 7(C).

On the other hand, the public interest in this information is significant.  As previously detailed to the Court, the individuals nominated to be corporate compliance monitors have significant experience in FCPA and other government investigations.  Understanding what matters these high-powered attorneys have worked on will assist the public in understanding whether any conflicts of interest may exist that contravene the principles DOJ set forth in the Morford Memorandum and reinforced, most recently, by the Benczkowski Memorandum, *see supra* pp. 3–5.  As such, the asserted public interest in disclosure is "learning [the candidates'] qualifications and affiliations" as a part of "understand[ing] [DOJ's] selection process," a goal that would most certainly "advance the public interest."  *Physicians Committee*, 117 F. Supp. 2d at 6.  Defendant's argument to the contrary wholly lacks support.

**B.      DOJ does not and cannot show that disclosure of the names of DOJ employees who worked to select corporate monitors would constitute an "unwarranted invasion of personal privacy."**

DOJ withheld the names and other identifying information of "non-supervisory DOJ attorneys that worked on the [FCPA] investigations and/or prosecutions that were the subject of the monitor candidate selection process."  Def. Mot. at 18; *see also* Jones Decl. ¶ 54.  Defendant's reliance on Exemptions 6 and/or 7(C) to withhold the names of these public employees is unlawful.

"A name and work telephone number is not personal or intimate information, such as a home address or a social security number, that normally would be considered protected information under FOIA Exemption 6."  *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005).  In *Leadership Conference*, the court rejected DOJ's

invocation of Exemption 6 to withhold the names and work telephone numbers of Justice

Department paralegals.  Defendant attempts to redact this information for all purported "line

attorneys" mentioned in the records, without setting forth any privacy interest beyond "an

expectation of privacy in their identity."  Def. Mot. at 19–20.  Defendant's blanket assertion that

disclosure of their names would constitute an unwarranted invasion of personal privacy is

insufficient.  Defendant fails to establish that these government employees have any privacy

interest in the fact of their employment by a government agency and their involvement in FCPA

compliance matters.

        The cases relied upon by Defendant are inapposite.  For example, *Miller v. Department of*

*Justice* concerned the release of names of law enforcement personnel in the context of ongoing,

criminal drug investigations where "no public interest in disclosure" was identified.  562 F.

Supp. 2d 82, 120 (D.D.C. 2008).  Even more dissimilar, the court in *Judicial Watch v. Food and*

*Drug Administration* upheld the Food and Drug Administration's withholding of the names *and*

*addresses* of FDA employees associated with the FDA's approval of mifepristone (a drug used to

effectuate medical abortions) due to concerns of "abortion-related violence."  449 F.3d 141, 199

(D.C. Cir. 2006).  And, while the D.C. Circuit in *Common Cause v. Nuclear Regulatory*

*Commission* quoted FOIA legislative history for the proposition that Exemption 6 provides

"greater protection" to "low-level government employees,"  674 F.2d 921, 938 (D.C. Cir. 1982)

(quoting H.R. Rep. No. 94-880), the court ultimately ordered that transcripts of closed meetings

at issue could not be withheld.  *Id.* ("Exemption 6, the report added, 'must not be used by an

agency to shield itself from political controversy involving the agency and its employees about

which the public should be informed.'" (quoting S. Rep. No. 94-354, at 21–22)).  And in the

other cases cited by Defendant, the court shielded the names *and contact information* of

government employees where their privacy interest was sufficient to outweigh public interest in

the information.  *See Fed. Labor Relations Auth. v. United States Dep't of Treasury*, 884 F.2d

1446, 1452 (D.C. Cir. 1989); *Painting and Drywall Work Preservation Fund v. HUD*, 936 F.2d

1300, 1303 (D.C. Cir. 1991).

Defendant's *Vaughn* Index, in particular, fails to make any showing that the release of the

names—alone—of the attorneys who litigated FCPA matters or engaged in the process of

selecting corporate compliance monitors reveal "intimate details" or "damaging information"

that implicate significant privacy concerns.  *Norton*, 309 F. 3d at 33.

Although Defendant claims, without evidence, that these attorneys should remain

anonymous because they "are subject to potential harassment in light of the type of work they

perform," Def. Mot. at 19, n. 7, this Court has previously noted that "[t]he names of government

attorneys involved in FCPA and FOIA maters are released in public court filings on a daily

basis." *Tokar*, 304 F. Supp. 3d at 101.  And, as Defendant admits, these attorneys "are

individuals who actively participated in the investigation and prosecution of the underlying

FCPA matters, or the recommendation of monitor candidates."  Def. Mot. at 19, n. 7.  It is

difficult to understand how these government attorneys, who were involved in public litigation of

matters of significant public interest, have any justifiable interest in preventing their names from

being released in connection with their role as attorneys who work on these enforcement matters.

As a result, Defendant's blanket assertion that disclosure of their names would constitute an

unwarranted invasion of personal privacy is insufficient, and Defendant fails to establish that

these attorneys have any privacy interest in the fact of their employment by a government

agency, generally, and their involvement in FCPA enforcement matters and/or the selection of

monitorships following the entry of deferred prosecution agreements under the FCPA,

22

specifically.

Finally, although Defendant argues that there is "no discernible public interest" in the disclosure of attorneys involved in, for example, the recommendation of monitor candidates, this information strikes at the core of Plaintiff's FOIA Request.  As detailed above, *supra* pp. 3–5, Plaintiff submitted his FOIA request in an effort to better understand and report on DOJ's process for selecting corporate compliance monitors and its compliance with the Morford Memorandum.  This interest does not come out of thin air; the corporate compliance monitor selection process has been a subject of significant controversy over the past decade, which prompted DOJ to launch an internal investigation into its own selection practices and issue new guidelines, which have recently been updated to further clarify and refine the monitor selection process.  *See supra* pp. 4–5.  Indeed, criticism of the corporate compliance monitor selection process still exists today.  *See, e.g.*, Tokar Decl. ¶ 21, Ex. K (article reporting that, since 2014, only three women and three non-white male lawyers have been chosen by DOJ to serve as corporate monitors, while more than 40 white men were chosen for such roles); Tokar Decl. ¶ 22, Ex. L (interviewing former FCPA monitor candidates who "felt that the selection process could benefit from greater transparency").  Understanding what DOJ attorneys have been involved in the corporate compliance monitor selection process is critical to understanding whether any potential conflicts of interest may exist in contravention of the principles established by the Morford Memorandum.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied, and the Court should enter summary judgment in favor of Plaintiff as to the Defendant's improper withholding of responsive records from Plaintiff.

Dated:  June 3, 2019

/s/ Jennifer A. Nelson
Jennifer A. Nelson
DC Bar No. 1011387
Bruce D. Brown
D.C. Bar No. 457317
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, D.C. 20005
Phone:  202.795.9300
Facsimile:  202.795.9310
E-mail: jnelson@rcfp.org
E-mail: bbrown@rcfp.org

*Counsel for Plaintiff Dylan Tokar*