# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| DYLAN TOKAR, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-2410 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 30, 32 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### Granting in Part and Denying in Part Defendant's Motion for Summary Judgment; Denying Plaintiff's Motion for Summary Judgment

## I. INTRODUCTION

This case concerns a pair of Freedom of Information Act ("FOIA") requests made by Plaintiff Dylan Tokar, a journalist who wrote about the Foreign Corrupt Practices Act ("FCPA") for the trade publication *Just Anti-Corruption*. As part of his research, he sought a variety of records from the Defendant, the U.S. Department of Justice ("DOJ"). When he failed to receive any of the documents to which believed himself entitled, Mr. Tokar filed suit in this Court. Subsequently, after DOJ produced some redacted responses, both parties moved for summary judgment—DOJ arguing that its obligations were met, Mr. Tokar challenging the breadth of the redactions. In resolving those motions, this Court found that some of DOJ's redactions were not justified and ordered further disclosures. *See generally Tokar v. U.S. Dep't of Justice* (*Tokar I*), 304 F. Supp. 3d 81 (D.D.C. 2018). Now, after another round of production guided by the Court's earlier opinion, both parties file renewed cross-motions for summary judgment. For the reasons explained below, the Court (1) denies Mr. Tokar's motion and (2) grants DOJ's motion in part and denies it in part.

## II. BACKGROUND

As explained in *Tokar I*, Mr. Tokar was interested in the selection process for FCPA "corporate compliance monitors," the third-party observers often appointed under so-called deferred prosecution agreements. These monitors are generally hired and paid by a company under scrutiny for violations; they typically help investigate the causes of compliance failures and help implement policies to reduce the risk of future misconduct. After public criticism of monitor selection practices,[1] DOJ issued the "Morford Memorandum," which proposed various mechanisms to avoid conflicts of interest. One specific recommendation was that DOJ create a centralized Standing Committee responsible for the selection of monitors; another was that monitors be selected from a pool of at least three qualified candidates wherever possible.[2] *See Tokar I*, 304 F. Supp. 3d at 86–87.

Curious about how the proposals from the Morford Memorandum were being implemented, Mr. Tokar made a series of FOIA requests. *Id.* at 87. He initially sought a broad swath of documents relating to appointment of monitors under fifteen specific FCPA settlement agreements.[3] *Id.* at 87. Specifically, he sought "[a]ll documents submitted by counsel for the companies at the outset of each monitor selection process, including the names of up to three qualified monitor candidates whom the companies are allowed to recommend," "[a]ll Monitor

---

[1] *See, e.g.*, Philip Shenon, *Ashcroft Deal Brings Scrutiny in Justice Dept.*, N.Y. Times, Jan. 10, 2008 (reporting on a no-bid 18-month monitor contract allegedly worth $28 to $52 million).

[2] In October 2018, DOJ issued a follow-up memorandum (the "Benczkowski Memorandum"), which sought to further refine the monitor selection process. *See* Mem. Opp. Def.'s Mot. Summ. J. & Supp. Pl.'s Cross-Mot. Summ. J. ("Pl.'s Opp.") at 8–9, ECF No. 32-1

[3] The fifteen corporations were: Alcatel-Lucent, S.A.; Alliance One International AG; Alstom S.A.; Avon Products, Inc.; BAE Systems plc; Bilfinger SE; Biomet Inc.; Daimler AG; Diebold Inc.; Innospec Inc.; JGC Corporation; Smith & Nephew, Inc.; Technip S.A.; Universal Corporation; and Weatherford International Ltd. *Tokar I*, 304 F. Supp. 3d at 87 n.1.

Selection Memoranda, including any files, documents and attachments therein, submitted to the Standing Committee for review," and "[r]ecords of the Standing Committee, including its membership, attendance records, appointments of temporary designees, voting records and recusals in connection with the consideration of monitor candidates." *Id.*

After negotiations with DOJ, which pointed out that many of these documents would be subject to multiple FOIA exemptions, Mr. Tokar agreed to narrow his request to the following:

> 1. The names of the up to three monitor candidates and their associated law or consulting firms submitted to the Department by the defendant corporations under the terms of their negotiated resolutions.
>
> 2. The names and titles of members of the Criminal Division's Standing Committee on the Selection of Monitors for the period Jan. 1, 2009 up through the present date. Along with the names of the members of the committee, please give their dates of service . . . [and] the names of any temporary designees appointed to the committee and the dates of their service.

*Id.* at 88. Some months later, DOJ informed Mr. Tokar that it would be informing the fifteen companies of his request and giving them an opportunity to object, in accordance with Executive Order 12,600 and 28 C.F.R. § 16.8. *Id.* Fourteen companies ultimately did submit objections; Mr. Tokar promptly filed a second FOIA request for copies of these submissions. *Id.* After further months without a response to either request, Mr. Tokar filed this suit. *Id.*

Eventually, DOJ provided a summary table containing the information listed in the first (narrowed) FOIA request, but "with certain information—the names of the monitor candidates who were nominated but not selected, the firms these candidates worked for if those firms were small, and the names of two members of the DOJ Standing Committee"—redacted for personal privacy reasons pursuant to FOIA Exemptions 6 and 7(C). *Id.* Later, in response to Mr. Tokar's second request, it provided copies of the 28 C.F.R. § 16.8 response letters, with certain

3

information withheld under Exemptions 4, 6, and 7(C). *Id.* at 89. Specifically, under Exemptions 6 and 7(C), DOJ continued to redact the names of non-selected monitor candidates, and also withheld the names of the private attorneys who had responded to the notices on behalf of their corporate clients and the names of two DOJ employees who processed the submissions. *Id.* And under Exemption 4, which allows for the withholding of confidential commercial information, DOJ redacted details of one corporation's compliance program. *Id.* at 94.

On summary judgment, Mr. Tokar first argued that DOJ was required to provide not just a table listing the names of the monitor candidates and members of the Standing Committee, but also the underlying documents used to create the table. *Id.* at 90. He also challenged the justification for the redactions under Exemptions 6 and 7(C). *Id.* In ruling, this Court agreed that (1) Mr. Tokar's narrowed request should have been construed as a request for the actual underlying documents and (2) that the withholding of the names of the non-selected monitor candidates, their firms, the private attorneys responding to response letters, and the two DOJ processing attorneys was not justified.[4] *Id.* at 90–92, 94–102. But it affirmed the redactions made pursuant to Exemption 4. *Id.* at 94 n.3.

After a subsequent round of production and negotiations guided by the Court's opinion, the parties brought the present cross-motions for summary judgment. DOJ argued that it had met its obligations and that certain remaining withholdings were justified under Exemptions 4, 5, 6, and 7(C). *See generally* Def.'s Mot. Summ. J., ECF No. 30.[5] For his part, Mr. Tokar raised two

---

[4] At some point during the first round of summary judgment briefing, DOJ voluntarily released the names of the two remaining Standing Committee members, thereby resolving that issue. *See Tokar I*, 304 F. Supp. 3d at 95. It also conceded that Exemption 7(C) did not apply to the 28 C.F.R. § 16.8 response letters, *id.* at 89, presumably because they were not "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).

[5] Unless otherwise indicated, provided page numbers reference the page number of the ECF document.

specific objections. *See* Mem. Opp. Def.'s Mot. Summ. J. & Supp. Pl.'s Cross-Mot. Summ. J. ("Pl.'s Opp.") at 7, ECF No. 32-1. First, he challenged DOJ's withholding (as "non-responsive") of certain emails contained within larger, concededly responsive email chains; Mr. Tokar argued that each chain—rather than each email—constituted a single record and that DOJ was not permitted to redact a subset of non-responsive information from a record deemed responsive overall. Pl.'s Opp. at 13–14 (citing *Am. Immigration Lawyers' Ass'n v. Exec. Office for Immigration Rev.*, 830 F.3d 667, 670 (D.C. Cir. 2016)). Second, he challenged the continued withholding—under Exemptions 6 and 7(C)—of (1) the names of certain DOJ line attorneys involved in monitor selection and (2) information about the monitor candidates, "including information related to their professional client representations." Pl.'s Opp. at 20–21. Mr. Tokar explicitly did not challenge the adequacy of DOJ's search for responsive records, or DOJ's assertion of Exemptions 4 and 5 as to portions of certain records. *Id.* at 7.

Perhaps appreciating the strength of Mr. Tokar's arguments, DOJ reconsidered its position mid-briefing and made a supplemental production before filing its reply. *See* Def.'s Reply at 2, ECF No. 34. It released the unresponsive emails contained within the larger chains, thereby effectively mooting Mr. Tokar's first objection. *Id.* at 2. DOJ also released the names of its line attorneys involved in monitor selection. *Id.* at 2–3. And finally, it released some additional information about monitor candidates' former corporate clients, *id.* at 3, although it "continued to withhold, pursuant to Exemption 6 and 7(C), the names of private individuals whom the monitor candidates represented in prior, unrelated criminal matters," *id.* at 4.

In his reply, Mr. Tokar disputes that these concessions are enough to resolve the case. First, he strongly criticizes DOJ's evolving position on the "non-responsive" emails, suggesting it was a strategic ploy that wasted his and this Court's resources. *See* Pl.'s Reply at 6, ECF No.

5

36. More substantively, he challenges DOJ's continued withholding of certain information about the monitor candidates' former clients, *id.* at 8–9, and claims that DOJ is still improperly redacting the names of some relevant government line attorneys, *id.* at 9–10. The Court addresses each argument in turn.

### III. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), while a dispute is "genuine" if there is enough evidence for a reasonable finder of fact to decide in favor of the non-movant, *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). In reviewing a motion for summary judgment under the FOIA, the district court has an obligation to review the record *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). Even when a plaintiff does not challenge the adequacy of an agency's search for responsive records, an "agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal citation and punctuation omitted). The agency must also show that any responsive records that were not provided were properly withheld under one of the nine express statutory exemptions. *See Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice* (*CREW I*), 746 F.3d 1082, 1088 (D.C. Cir. 2014). The agency may carry that burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). Even when the invocation of a particular exemption is not challenged, "the Court still has an independent duty to 'determine for itself whether the record and any undisputed material facts justify granting summary judgment.'" *Tokar I*, 304 F. Supp. 3d at 94 n.3 (quoting *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016)).

## IV. ANALYSIS

As noted above, Mr. Tokar did not object to the adequacy of DOJ's search for responsive records[6] or challenge DOJ's assertion of Exemptions 4 and 5 as to portions of certain documents.[7] Additionally, many of Mr. Tokar's initial arguments have been effectively mooted

---

[6] Even though it has not been challenged by Mr. Tokar, *see* Pl.'s Opp. at 7, the Court has an independent obligation to review the adequacy of DOJ's search. *See Tokar I*, 304 F. Supp. 3d at 93 (citing *Steinberg*, 23 F.3d at 551). Relying on affidavits, DOJ explained in detail the steps it took to identify pertinent materials. *See* Def.'s Mot. Summ. J. at 15–16, 34. Based on these unchallenged representations, the Court finds that both searches were reasonably calculated to uncover all relevant documents. *See Steinberg*, 23 F.3d at 551.

[7] Similarly, as explained briefly here, the Court finds that DOJ's invocation of Exemptions 4 and 5 was permissible, as DOJ submitted uncontroverted affidavits reasonably describing how the redacted information meets the requirements of both exemptions. *See Larson*, 565 F.3d at 862.

DOJ invoked FOIA Exemption 4, which covers "commercial or financial information" provided it is "privileged or confidential," 5 U.S.C. § 552(b)(4), to withhold details of companies' compliance programs and candidates' prior compliance work. *See* Def.'s Mot. Summ. J. at 28. This information comfortably qualifies as commercial. *See Tokar I*, 304 F. Supp. 3d at 94 n.3 (noting that "courts in this circuit have previously found information about the way companies implement their compliance programs is sufficiently instrumental to the companies' operations to qualify as commercial") (internal citations and punctuation omitted). As to confidentiality: until recently, courts in this Circuit generally applied one of two tests to determine whether information was confidential, depending on whether it was provided to the government voluntarily or involuntarily. *See Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992) (voluntarily); *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974) (involuntarily). In its opening

by DOJ's mid-briefing concessions. The Court therefore proceeds directly to the remaining live issues.

### A. Withholding of Individual Emails Within a Chain

Mr. Tokar takes issue with DOJ's belated decision to disclose the individual "non-responsive" emails contained within the larger chains. Mr. Tokar suggests that "Defendant's mid-litigation retreat is plainly designed to avoid an adverse ruling from the Court on the merits of Plaintiff's arguments." Pl.'s Reply at 6. He also criticizes "Defendant's decision to wait until *after* the filing of Plaintiff's Cross-Motion to abandon [its] baseless position." *Id.* As Mr. Tokar explains, his counsel had raised this precise issue in discussions with DOJ prior to briefing, highlighting specific case law and requesting reconsideration of its position, to no avail. *Id.* at 7.

---

brief here, DOJ argued that the information was confidential under either test. *See* Def.'s Mot. Summ. J. at 34. After DOJ's opening brief was filed, however, the Supreme Court abrogated *National Parks* and provided new guidance on the meaning of "confidential" under Exemption 4. *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019). But despite the change in governing law, DOJ has made sufficient representations: it has averred that the information would not be customarily disclosed, Jones Dec. ¶¶ 44, 46, 47, ECF No. 30-3, and suggested that it was submitted voluntarily under the assurance that it would remain confidential, *see id.* ¶ 43 (averring that disclosure would likely "impair the agency's ability to obtain necessary information in the future"). *See Food Mktg. Inst.*, 139 S. Ct. at 2363 (holding that only the former condition—that the information be "customarily kept private, or at least closely held, by the person imparting it"—was strictly necessary and declining to decide whether the latter— the government's assurance of confidentiality, whether express or implied—was also required).

DOJ also invoked Exemption 5, which exempts "inter-agency or intra-agency memorandums or letters which would not be available by law . . . in litigation with the agency," 5 U.S.C. § 552(b)(5), to withhold and redact materials from Mr. Tokar's first request, including attorney memoranda sent to the Standing Committee on the Selection of Monitors, communications between DOJ attorneys, and various Standing Committee Records. *See* Def.'s Mot. Summ. J. at 14, 18. Relying on affidavits, DOJ reasonably described how these materials fell under the traditional categories of evidentiary privileges recognized under Exemption 5, *see Formaldehyde Inst. v. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989), as they either represented attorney work product or fell under the deliberative process privilege. *See* Def.'s Mot. Summ. J. at 19–20, 22.

In light of this conduct, Mr. Tokar requests that the Court "now order briefing on Plaintiff's attorney fees and costs." *Id.* at 5.

Given that the Court's disposition of these pending cross-motions does not fully resolve the case, the Court will defer consideration of Mr. Tokar's arguments until later, after final judgment. *See* Fed. R. Civ. P. 54(d); LCvR 54.2(a); *see also Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986) (noting that "attorney fee issues are ancillary to the underlying action and survive independently under the court's equitable jurisdiction"). Otherwise, the determination of fees would proceed on a piecemeal basis, which is one of the main reasons why interim fee awards under FOIA are disfavored. *See Allen v. F.B.I.*, 716 F. Supp. 667, 671 (D.D.C. 1988) (indicating that interim fee awards under FOIA should be "granted only in the unusual instances of protracted litigation and financial hardship").

Of course, Mr. Tokar remains to free to move for an interim fee award if the circumstances justify it. But at least until he does so, the Court declines to order briefing and assumes that he will renew his arguments in a post-judgment petition, where one relevant factor will be "whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Davy v. C.I.A.*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) (first quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1096 (D.C. Cir. 1992), then quoting *LaSalle Extension Univ. v. F.T.C.*, 627 F.2d 481, 486 (D.C. Cir. 1980)).

### B. Withholding of Information about Monitors' Former Individual Clients

In its most recent production, DOJ "disclose[d] the identity of corporate clients of the monitor candidates and provide[d] additional information regarding the nature of those representations." Def.'s Reply at 4. At the same time, however, it continued to withhold, under

9

FOIA Exemptions 6 and 7(C), "the names of private individuals whom the monitor candidates represented in prior, unrelated criminal matters." Def.'s Reply at 4.

1. Legal Standard

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," while Exemption 7(C) covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6)–(7). In cases like this one, "[w]hen information is claimed to be exempt from disclosure under both provisions, courts 'focus on . . . Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material.'" *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice* (*CREW II*), 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *CREW I*, 746 F.3d at 1091 n.2).[8]

Under both exemptions, a court has to determine if there is a substantial privacy interest in the information. *See Am. Civil Liberties Union v. Dep't of Justice*, 655 F.2d 1, 6–7 (D.C. Cir. 2011). If there is such an interest, a court must balance it against the public interest, "focus[ing] on 'the citizens' right to be informed about what their government is up to.'" *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotation omitted)).

---

[8] Of course, under Exemption 7(C), a court must first determine whether the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).

2. Analysis

As an initial matter: the Court finds, and Mr. Tokar does not dispute, that the documents were "compiled for law enforcement purposes" in the required sense. DOJ obtained and compiled these documents as part of its FCPA investigations into the fifteen companies. Under Exemption 7, it does not matter that some of the documents may not have been originally created for law enforcement purposes. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 155 (1989) (rejecting a distinction between documents that "originally were assembled for law enforcement purposes and those that were not so originally assembled but were gathered later for such purposes").

As to the privacy interest: it is settled that individuals have a substantial interest in not being revealed as subjects of criminal investigations. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) ("[I]ndividuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation."). Mr. Tokar does not take issue with this proposition directly, but suggests that the privacy concerns may not be as substantial as they appear.

First, he questions why DOJ has revealed the names of some candidates' former clients but not others. *See* Pl.'s Reply at 8 (noting that DOJ removed the redaction indicating a candidate's prior experience representing a particular company, but that DOJ nevertheless "continues to withhold presumably similar information contained in the CVs of other corporate compliance monitor candidates"). But DOJ has explained that, at least in the final round of production, it has only withheld the names of individual—as opposed to corporate—clients. *See* Def.'s Reply at 4. And this distinction makes sense, because corporations do not have the sort of privacy interests that are protected under FOIA. *See FCC v. AT&T, Inc.*, 562 U.S. 397, 409–10

(2011) ("The protection in FOIA against disclosure of law enforcement information on the ground that it would constitute an unwarranted invasion of personal privacy does not extend to corporations."); *Sims v. CIA*, 642 F.2d 562, 572 n.47 (D.C. Cir. 1980) ("Exemption 6 is applicable only to individuals.").

Second, Mr. Tokar implies that the privacy interests of the individual clients cannot really be so substantial, because at least some of the clients' names appear to have been redacted from things like the candidates' *curricula vitae* and publicly-available website biographies. Pl.'s Reply at 8. As his sole example, Mr. Tokar cites the biography of one candidate, at least part of which [9] appears to have been available online at one point. Tokar Decl. Ex. J at 14–16, ECF No. 32-13 (Biography of Attorney Neil Fagan); *see also* Pl.'s Reply at 8 n.1 (noting that Mr. Fagan's biography is "no longer available on the Internet").

At least on the current record, the Court is not convinced. On the one hand, it is true that CVs are generally not repositories of sensitive or confidential information; indeed, most "information in a C.V. is ordinarily written down precisely so that it *will* be displayed." *Physicians Comm. for Responsible Med. v. Glickman*, 117 F. Supp. 2d 1, 6 (D.D.C. 2000). And the very fact that the monitor candidates felt comfortable disclosing their individual clients' names (at least in certain contexts) suggests that they had their clients' permission to do so. *See, e.g.*, ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 18-480 (2018) at 2 (noting that, in the absence of the client's informed consent, a lawyer may not reveal information

---

[9] It is not clear to the Court that all three pages of Mr. Fagan's biography were once available online. The first page admittedly looks like a typically public law firm profile (it includes a headshot, contact details, and a brief biography written in the third-person), but it does not actually contain any redactions. Tokar Decl. Ex. J at 14. The next two pages, which do contain redactions under Exemptions 6 and 7(C), are text-only and are written in the first-person, which suggests that they may constitute a separate, less-public document. *Id.* at 15–16.

relating to a representation and that "[e]ven client identity is protected" under the applicable confidentiality rule). But, on the other hand, the clients may have consented to only limited kinds of disclosure, and it is not clear that all of these CVs and biographies were intended to be (or were in fact) widely shared or published. And even then, past disclosure does not necessarily defeat an interest against further, potentially broader disclosure now. *See Reporters Comm.*, 489 U.S. at 767 ("[O]ur cases have also recognized the privacy interest inherent in the nondisclosure of certain information even when the information may have been at one time public."); *Harrison v. Exec. Office for U.S. Attorneys*, 377 F. Supp. 2d 141, 148 (D.D.C. 2005) ("The fact that there might have been prior disclosure of personal information does not eliminate the privacy interest in avoiding further disclosure by the government.").

Because there is doubt about the nature of the privacy interests at stake, the Court directs DOJ to, within 60 days, (1) contact the relevant monitor candidates and inquire whether the candidates have their clients' consent to publicly disclose (and/or have previously publicly disclosed) the existence of those representations and (2) conduct its own inquiry into whether the existence of those representations is already in the public domain (e.g., if the matter was filed in court, whether PACER reveals the representation).[10]

---

[10] Because the nature of privacy interests is unclear at this point, the Court is unable to proceed to the next step of the analysis and weigh them against the public interest in disclosure. But the Court questions DOJ's alternative claims (1) that it "could not discern any public interest in the release of the names of these [formerly represented] individuals," and (2) assuming that there were some public interest, that it would be satisfied by "information regarding the nature of the unrelated criminal matter (rather than the name of the individual represented)," which was not redacted. Def.'s Reply at 4. At this stage, the Court instead agrees with Mr. Tokar's position: that the identities of the monitor candidates' former clients could help establish whether DOJ-supervised monitorships are free from conflicts of interest. *See* Pl.'s Reply at 9; *cf. CREW I*, 746 F.3d at 1093 (recognizing a public interest in "how the FBI and the DOJ carried out their respective statutory duties to investigate and prosecute criminal conduct").

### C. Withholding of Additional Names of Government Attorneys

The final contested issue appears to be one of fact, not law. DOJ maintains that is has released all the names of "DOJ non-supervisory/line attorneys" involved in the relevant FCPA investigations, except when the names are independently subject to a different, unchallenged exemption. *See* Def.'s Reply at 2–3. "Accordingly, with respect to the redaction of the names of nonsupervisory/line attorneys . . . and in light of DOJ's supplemental production, there likewise would appear to remain no meaningful dispute on that issue." *Id.* at 3. Mr. Tokar counters that "[s]ome materials produced by DOJ in response to Plaintiff's FOIA request, however, still contain redactions withholding the names of government attorneys involved in the corporate compliance monitor selection process." Pl.'s Reply at 9.

As evidence, Mr. Tokar cites a single example: what appears to be an email, sent by a lawyer at a private firm, proposing various monitor candidates to two government lawyers—one at SEC, the other at DOJ. *See id.* at 9 (citing Tokar Decl. Ex. I at 2, ECF No. 32-12). In the body of the email, the apparent name of the SEC recipient is redacted; the name of the DOJ recipient is not. *Id.* Based on the briefing here, the Court is unsure (1) whether DOJ has in mind some principled but unstated basis for treating the SEC and DOJ lawyers differently, *compare* Def.'s Reply at 2 (discussing "*DOJ* line attorney names") (emphasis added), *with* Pl.'s Reply at 9 (discussing the "names of *government* attorneys") (emphasis added), (2) whether DOJ withheld the names of other government attorneys beyond this single redaction, or even (3) whether this redaction has been (or was meant to have been) lifted, given that this particular example pre-dates DOJ's recent round of concessions and supplemental production. In the face of these uncertainties, the Court cannot grant summary judgment to either party. But given that DOJ has already been willing to release the names of the DOJ line attorneys involved in the relevant

proceedings, the parties should be able to resolve this issue through further negotiations and, if necessary, production. *See also Tokar I*, 304 F. Supp. 3d at 101 ("The names of government attorneys involved in FCPA and FOIA matters are released in public court filings on a daily basis.").

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's motion for summary judgment is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 19, 2019                                   RUDOLPH CONTRERAS
                                                            United States District Judge